<pre>
 1                 IN THE UNITED STATES DISTRICT COURT

 2                      FOR THE DISTRICT OF OREGON

 3                         PORTLAND DIVISION

 4
     UNITED STATES OF AMERICA,       )
 5                                    )
                        Plaintiff,    )  Case No. 3:15-cr-00438-JO-1
 6                                    )
                   v.                 )
 7                                    )  January 7, 2016
     WINSTON SHROUT,                  )
 8                                    )
                        Defendant.    )  Portland, Oregon
 9   _____ )

10

11

12

13                        FIRST APPEARANCE

14                   FTR-RECORDED PROCEEDINGS

15                   TRANSCRIPT OF PROCEEDINGS

16            BEFORE THE HONORABLE JOHN V. ACOSTA

17         UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

18

19

20

21

22

23

24

25
</pre>

1                              APPEARANCES

2   FOR THE PLAINTIFF:
                                STUART A. WEXLER
3                               Department of Justice
                                Tax Division
4                               601 D Street NW
                                Washington, DC 20004
5
    FOR THE DEFENDANT:
6                               RUBEN L. INIGUEZ
                                Federal Public Defender's Office
7                               101 SW Main Street
                                Suite 1700
8                               Portland, OR 97204

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    TRANSCRIPT OF PROCEEDINGS

 2          (In open court:)

 3               THE COURT:  Mr. Iniguez, are you ready?

 4               MR. INIGUEZ:  Yes, Your Honor.

 5               THE COURT:  Thank you.  Mr. Wexler, go ahead, please.

 6               MR. WEXLER:  Good afternoon, Your Honor.

 7    Stewart Wexler of the United States Department of Justice Tax

 8    Division, appearing for the United States, in the matter of

 9    United States of America v. Winston Shrout.  Case number

10    3:15-cr-438, assigned to Judge Jones.  We are here for the

11    initial appearance and arraignment on a six-count indictment

12    alleging with each count a willful failure to file a tax

13    return.

14        The defendant is present and not in custody, appearing on

15    a summons.  It is my understanding he has not retained counsel,

16    but Mr. Iniguez of the Federal Defender's Office is present.

17               THE COURT:  All right.  Thank you.  Mr. Iniguez?

18               MR. INIGUEZ:  Good afternoon, Your Honor.  Ruben

19    Iniguez appearing.  Your Honor, my understanding is that

20    Mr. Shrout did receive a summons to appear.  He obviously is

21    appearing before the Court pursuant to that summons.  I did

22    receive, you know, via CM/ECF, a copy of this six-count

23    indictment, charging six misdemeanor counts, as Mr. Wexler just

24    indicated.  I've had an opportunity to review it.  I did not

25    have an opportunity to review it personally with Mr. Shrout;
```

1    however, I believe he has reviewed it himself having previously

2    received it.

3        I had an opportunity to speak with him briefly before

4    court, and he clearly does not want this Court to appoint

5    counsel to represent him in this matter.  He's allowing me to

6    stand here, as he knows it's my job, but he made very clear to

7    me, and I think he will tell the Court in a second, that he

8    does not want counsel appointed to represent him in this

9    matter, nor do I believe does he intend to represent himself,

10   as he understands that to be, for various reasons.  He's not an

11   attorney, other things that he may better explain to the Court.

12       So that brings us to these proceedings.  I'm here.  I'm

13   perfectly willing and available to be appointed -- my office is

14   the same -- should the Court see fit; but he's made it very

15   clear to me that he does not want counsel appointed.

16              THE COURT:  All right.  Thank you.

17       Mr. Shrout, you can remain seated.  That's fine.  Can you

18   hear me okay?

19              THE DEFENDANT:  Yes, I can.

20              THE COURT:  All right.  You understand you have a

21   right to have a lawyer appointed to represent you.  Do you know

22   that?

23              THE DEFENDANT:  No, Your Honor, I don't.

24              THE COURT:  Well, in a criminal case, you can have

25   appointed counsel if you can't afford counsel.  If you can't

1    retain counsel -- in other words, if you can't pay for a

2    lawyer, the Court will appoint one to represent you in this

3    case.

4         Mr. Iniguez is a lawyer with the Federal Public Defender's

5    Office in this district.  If you wanted him to represent you, I

6    would appoint him to represent you at no cost to you.

7         Do you want me to do that or --

8              THE DEFENDANT:  I've spoken to this gentleman here.

9    He cannot represent me.  However, if you want to appoint him as

10   standby counsel for purpose of procedure, I will accept that.

11             THE COURT:  All right.  I just want to be clear.

12   Whether it's Mr. Iniguez or another lawyer, either in the

13   Federal Public Defender's Office or a lawyer who is a member of

14   the CJA panel, are you telling me that you don't want the Court

15   to appoint any lawyer to represent you?

16             THE DEFENDANT:  Yes, that's correct.

17             THE COURT:  All right.  Thank you for clarifying

18   that.

19        So, in light of that, Mr. Iniguez, I will appoint you as

20   standby counsel for Mr. Shrout in this matter.

21             MR. WEXLER:  Your Honor, if I may?

22             THE COURT:  Go ahead, Mr. Wexler.

23             MR. WEXLER:  I believe it's only appropriate to

24   appoint Mr. Iniguez as standby counsel if the defendant is

25   choosing to represent himself.  Mr. Iniguez mentions in his

1    remarks that it's his understanding the defendant does not

2    intend to represent himself.  I would ask that the Court go

3    through a *Faretta* colloquy with the defendant to determine

4    whether or not the defendant has made an unequivocal waiver of

5    his right to counsel and intends to represent himself or is

6    simply just trying to proceed without any attorneys in -- for

7    his side, Your Honor.

8         THE COURT:  Good point.  Mr. Iniguez did make that

9    distinction.

10        So, Mr. Shrout, the other question I need to ask you about

11   is whether you intend to hire a lawyer to represent you in this

12   case.

13        THE DEFENDANT:  Actually, once I'm (inaudible) my

14   intention is to plead guilty.

15        THE COURT:  All right.  Well, this is an arraignment

16   on the indictment.  You're here to enter a plea.  I'm going to

17   ask you if prior to coming to court today, after you had a

18   chance to review the indictment, you had the opportunity to

19   talk with a lawyer about the charges against you.

20        THE DEFENDANT:  Actually, I never received a copy of

21   the indictment.  I had to go to the clerk's office first thing

22   this morning to get one.  They have not been supplied to me,

23   and I have not had a chance to review it.

24        THE COURT:  Well, do you think you've had enough time

25   to review it now, or do you need more time to review it before

1   you decide what plea to enter?

2           THE DEFENDANT:  Actually, my intention is to plead

3   guilty as soon as the prosecutor will read and certify the

4   charges for the record.

5           THE COURT:  All right.  Mr. Wexler, your thoughts

6   about that?

7           MR. WEXLER:  Yes, Your Honor.  If the defendant is

8   simply asking that the indictment be read in court, I would be

9   happy to do that.  My concern is -- and I have some experience

10  handling cases of this variety -- is the defendant's use of the

11  word "certify."  I believe that the defendant is relying on

12  ideology and rhetoric, namely aligned with the sovereign

13  citizen movement, and, in his use of the term "certify," is

14  asking for something more than a simple reading of the

15  indictment.  But I would be happy to indulge the Court and the

16  defendant with a simple reading of the indictment if he is not

17  fully aware of what it contains.

18          THE COURT:  I think what I'm going to do is this,

19  Mr. Shrout:  This is your initial appearance on these charges.

20  Almost always the defendant receives appointed counsel if the

21  defendant wishes it.  You've indicated you don't want me to

22  appoint counsel and don't intend to hire a lawyer to represent

23  you, so we've been through that.

24      Typically, as you've heard, because you were here during

25  at least some of the criminal calendar proceedings, I advise

1    defendants of their rights.  I will tell you you have the right

2    to remain silent on the charges against you.  You don't have to

3    talk to them about anyone if you choose to not do that, and you

4    have a right to know the charges that have been made against

5    you.

6        One of the other things we always do at these hearings is

7    we set the matter for further proceedings.

8        If it is your intention to enter a plea in the case with

9    respect to one or more of the counts in the indictment, my

10   inclination is to set this matter for either a plea hearing or

11   a status hearing before Judge Jones.  Judge Jones is the judge

12   assigned to the case.

13       I think if you intend to enter a plea, as you've

14   indicated, it's probably better entered after you've had some

15   time to fully review the indictment and can do so before the

16   judge who is assigned to the case.

17       I can set the matter for -- I'll say a status conference.

18   That way you'll have a hearing date before Judge Jones.  If he

19   has questions, he can ask you directly, and then he can decide

20   how best to proceed with respect to what you wish to do with

21   this case.

22       So, Mr. Wexler, that's what I'm going to do.  Do you have

23   any objections to that?

24           MR. WEXLER:  No objections to that, Your Honor.

25   Though I would ask that it be timely, as I'm sure the Court

1   intends, and there is the matter of the defendant's release

2   conditions pending that status conference.

3           THE COURT:  Sure.  Well, I think, to some extent, the

4   date I set for a hearing or a status hearing in this matter

5   will be affected by the release of the defendant.

6      Mr. Wexler, have you seen pretrial service's report?

7           MR. WEXLER:  I have, Your Honor, as I'm not sure if

8   the Court has also reviewed it.

9           THE COURT:  Yes, I have.

10          MR. WEXLER:  It is short because there is no

11  information in the report really of any value.  My

12  understanding is that the defendant was either not available or

13  not compliant with a pretrial interview.

14     I will note that I object to the ultimate conclusion of

15  the report, which is that the defendant be released on his own

16  recognizance, without conditions, subject to the providing of

17  an address.  The government has strong concerns, not concerns

18  rising to the requirement of detention, but strong concerns

19  about the defendant's continued appearance in this case, and,

20  as a result, has fashioned a number of special conditions that

21  I went over with Mr. Nischik on the phone.

22     I also advised Mr. Iniguez briefly, before this matter

23  before you today, that we'd like the Court to institute to

24  ensure that the defendant appears at both the status conference

25  and future hearings in this case.

1          THE COURT:  All right.  Mr. Wexler, why don't you

2    tell me what those conditions are you have in mind.

3          MR. WEXLER:  Yes, Your Honor.  First, the government

4    would ask that the defendant be required to surrender his

5    passport.  The defendant has worked extensively outside the

6    United States.  He has worked in Canada, in Australia, in

7    England.  He is scheduled to speak on a cruise called The

8    Conspira-Sea Cruise, as noted in the pretrial service's report,

9    which leaves out of Los Angeles on January 24, 2016.  That

10   cruise makes several stops in Mexico.

11        And I would note that while Mr. Shrout has gone to other

12   countries to work, he's frequently gone there at the invitation

13   of like-minded individuals who also hold themselves out to be

14   sovereigns, and, if Mr. Shrout were to leave this country, he

15   would find safe haven among those communities.  And so, as a

16   result, the government would first ask that Mr. Shrout

17   surrender his passport.

18        Second, Mr. Shrout maintains a residence, and his spouse

19   lives in the state of Utah.  He also maintains a residence here

20   in Hillsboro, Oregon, and we would ask that Mr. Shrout's travel

21   be restricted to either the state of Utah or the state of

22   Oregon; that he be free to travel within those states but that

23   he could only travel to and from those two states and that he

24   would be required to check in and check out with pretrial

25   services as he moved from state to state.

1    I would note that this should not restrict Mr. Shrout's

2  ability to earn income.  He gets a lot of his income through

3  internet payments.  He earns his income through coaching

4  services that are done via email and on the phone and also does

5  a lot of seminars over the web, webinars, which he can do in

6  either location.

7    He actually has utilized facilities in Oregon before to

8  work, so being in Oregon should not restrict his employment

9  opportunities in any way.

10    Third, we'd ask that while on release that his income

11  sources be restricted to those that are reportable to the

12  Internal Revenue Service.

13    Mr. Shrout's been indicted for a willful failure to file,

14  failure to report his income to the IRS, and, absent the

15  reporting of his income by third parties, the United States has

16  no knowledge of whether or not Mr. Shrout continues to earn

17  income which could result in additional harm to the government.

18  So we would ask that any income sources be restricted to those

19  that are reportable.

20    I would note that all of his known income sources at this

21  time do report to the Internal Revenue Service, so it would not

22  require any change in his current employment.

23    And then, finally, Your Honor, I would note that

24  Mr. Shrout, since the indictment in this case, has submitted

25  several documents, both to the Department of Justice, as well

1   as the Internal Revenue Service, as well as the Court.

2       Indeed, immediately after the indictment, I was approached

3   outside of this courthouse with a document in which Mr. Shrout

4   alleged that he was not subject to the jurisdiction of this

5   court; that he was a sovereign entity protected by a UN

6   charter.

7       And, subsequent to being presented with that document, I

8   received via mail, as well as the agent -- investigating agent

9   in this case received via mail, a document styled a commercial

10  lien in which the defendant reiterated that he is not subject

11  to the jurisdiction of the federal government and assessed

12  penalties against myself, against Special Agent Hill.  I will

13  also note that Your Honor has also been mentioned in that

14  document.  Each individual mentioned, as well as acting U.S.

15  Attorney Mr. Williams, is liable, according to that document,

16  for $1 trillion to Mr. Shrout.

17      In addition, after those -- those documents provided for

18  three days to comply.  After three days, I received a

19  failure-to-comply notice and that the matter was going to be

20  forwarded to the appropriate international authorities.

21      Subsequent to that, I was made aware of a mailing that was

22  received by the Clerk of the Court here in which two documents

23  were provided.  One had mentioned the Clerk of the Court, one

24  that mentioned Your Honor specifically, and which, again,

25  Mr. Shrout reiterated that he is not subject to the

1    jurisdiction of this Court.

2         All of this activity echoes activity that Mr. Shrout took

3    in a case -- a criminal case in the state of Utah in 2014 in

4    which he received a trial subpoena from the defense to appear

5    as a witness.  He responded to that trial subpoena by writing a

6    letter to the Court, a handwritten letter to the Court, saying

7    that he was not going to appear, that he was a protected

8    sovereign, and that appearing would be a conflict of interest.

9    And, ultimately, he also did not appear in response to that

10   subpoena.

11        He also responded with a similar commercial lien document

12   in response to a search warrant that was executed on himself

13   and associated business premises.  That warrant was executed in

14   2012.  He responded in 2014 with a commercial lien, again

15   naming various prosecutors, members of the U.S. Attorney's

16   Office, as well as Judge Stewart, who signed that document.

17        All that is to say that those documents and the

18   defendant's assertions regarding jurisdiction give the

19   government, regardless of Mr. Shrout's presence here today,

20   concern that that presence will continue.

21        I would also ask the Court that the Court admonition the

22   defendant regarding these mailings.  It's the government's

23   experience that these mailings are sort of entry documents into

24   a process that frequently results in the filing of actual liens

25   with various state entities, and that is a violation of Title

1    18 U.S.C. 1521.

2         So while it's customary to advise the defendant not to

3    violate any laws while on release, we would ask that the Court

4    specifically admonish the defendant to cease these mailings.

5         Now that this matter is underway, if the defendant has any

6    argument to make, the proper venue for that argument is through

7    the court filing system in the form of a pleading or a motion

8    and also specifically admonition the defendant that the filing

9    of false retaliatory liens is a federal crime under 18 U.S.C.

10   1521.  It's 1521.

11        And that is all of the special conditions.

12             THE COURT:  So, Mr. Wexler, the question for me to

13   decide under the Bail Reform Act is whether Mr. Shrout presents

14   a risk of danger to the community --

15             MR. WEXLER:  Yes, Your Honor.

16             THE COURT:  -- a risk of flight or both.

17        So the first thing I need to make sure I understand are

18   you proceeding -- are you seeking detention?  Let's start with

19   basics.

20             MR. WEXLER:  No, Your Honor, because we feel that

21   these conditions will assure --

22             THE COURT:  So you want conditions?

23             MR. WEXLER:  Yes, Your Honor.

24             THE COURT:  So the conditions that are implemented in

25   any pretrial release order have to be such as to ensure that

1   the defendant, while on release, does not present a risk of

2   danger to the community or a risk of flight.

3       Is it the government's position that he is a risk of

4   flight or a risk of danger or both, such that one or more of

5   the conditions you've articulated need to be implemented?

6           MR. WEXLER:  Yes, Your Honor.  And I apologize if

7   I -- I may have spoken too fast at the beginning.  We believe

8   that the defendant is a risk of flight, and we believe that the

9   defendant is a risk of economic harm --

10          THE COURT:  Okay.

11          MR. WEXLER:  -- but that these conditions would

12  ensure -- that would assuage the government's fears.

13          THE COURT:  Let's talk about flight.

14          MR. WEXLER:  Yes, Your Honor.

15          THE COURT:  Mr. Shrout is here.  He was not arrested.

16  He wasn't brought in by the marshals.  He was here on a

17  summons.  He showed up voluntarily.  He's obviously been around

18  the courthouse based on your description of certain encounters

19  with him.  You're aware of his involvement in another criminal

20  case, apparently, out of the District of Utah.  He doesn't seem

21  to me and there's nothing in the record to suggest that he is

22  going to get on a boat or a plane or in some other form of

23  transportation and either try to flee this jurisdiction, the

24  country, or otherwise make himself unavailable.

25      In fact, certainly some, if not many of the activities

1    you've described, suggest that he intends to stick around so

2    that he can engage in some of the activities that you've

3    describe he's already begun in connection with these particular

4    charges.

5         The Bail Reform Act is pretty clear about the factors that

6    I have to consider.   There isn't anything in the record showing

7    that he has a criminal record.   There isn't anything in the

8    record that I have that shows that he -- well, it shows he has

9    ties to the community.   You've already indicated that he

10   maintains a residence here in Oregon.   He doesn't seem to have

11   any problems with respect to use of drugs or lack of financial

12   resources.   He clearly has community ties.   He's apparently

13   lived in Oregon for at least a sufficient amount of time to

14   maintain a residence here.

15        Now, let's just put aside the cruise to Mexico.   Okay?

16   Let's put that aside, and we'll take that up separately.   If

17   this were -- and, Mr. Wexler, tell me if I'm understanding the

18   nature of the charges.   Are each of the counts in the

19   indictment misdemeanors, or are there any felonies involved?

20             MR. WEXLER:   There all misdemeanors, Your Honor.

21             THE COURT:   So if this were any other case and I had

22   the record before me that I had, on the flight issue, I would

23   release this defendant whether there would be conditions or

24   not; but given, frankly, the absence of any negative

25   indicators, under the Bail Reform Act, regarding risk of

1    flight, I don't think I would impose any conditions that would

2    ensure his continued appearance for proceedings in this matter.

3         I understand the arguments you've made.  I'm not sure what

4    happened in the Utah case.  What I do know is Mr. Shrout is

5    here now.  He's apparently been around in connection with the

6    charges in this case, making certain filings or delivering

7    certain documents.

8         So the risk of flight -- again, the Mexico cruise aside --

9    I think doesn't exist.

10        So let's now talk about the cruise to Mexico and whether

11   that changes the -- the circumstances of the risk of flight.

12        Mr. Shrout, I have a question for you before I continue to

13   talk to Mr. Wexler.  This cruise that you plan to go on

14   beginning January 24, when did you first make your reservations

15   or book the cruise?

16             THE DEFENDANT:  Oh, probably -- I can't tell exactly,

17   but probably as long as three or four or five months ago.

18             THE COURT:  Have you gone on similar cruises before?

19             THE DEFENDANT:  No.  I never have.  It would be the

20   first time.

21             THE COURT:  All right.  Thank you.

22        So, Mr. Wexler, what we have is we have a long-scheduled

23   trip, apparently, scheduled prior to the time Mr. Shrout knew

24   anything about these charges.  You indicated earlier that

25   he's -- I think it was you -- maybe it was Mr. Iniguez -- he's

1   gone to different countries.  You indicated some concern that

2   he might find safe haven with other ideological colleagues in

3   those jurisdictions; but, apparently, because he's sitting

4   right here at counsel table, he always comes back from those

5   countries, and I -- you haven't told me anything that gives me

6   concern that if he were to go on this cruise he would not

7   return or that there is someone waiting somewhere along the

8   cruise route to give him safe harbor.

9        Do you have any other information that bears on that?

10           MR. WEXLER:  Well, Your Honor, first, I would note

11  for the Court that -- that defendant's circumstances have

12  changed because, while it was a misdemeanor indictment, he is

13  under indictment now and facing the possibility of imprisonment

14  of up to a year in prison for each count, which could certainly

15  weigh on the defendant's state of mind at this time.

16       I will also specifically address the cruise note, and I

17  have documents that I would be happy to provide the Court for

18  review.  I will note that the cruise has approximately two to

19  three dozen similarly minded speakers scheduled to appear on

20  the cruise, and so certainly the defendant would be within a

21  community just on the boat itself.

22           THE COURT:  Okay.  Hang on a minute.  There had been

23  times in the past, in the eight years I've been on the bench,

24  I've been presented with search warrants and in some of those

25  instances the underlying rationale for the request to search is

1    based on the particular target's association with people of

2    specific ideological groups.

3        If Mr. Shrout were a Democrat or a Republican going to a

4    Democrat or a Republican convention, I'm not sure that would be

5    much different than getting on a boat with a bunch of other

6    folks who have the same ideas that he does about various rights

7    and freedoms.

8        Apart from whether I may agree or not with any of those

9    ideas, what you're asking me to do is impose a condition, based

10   on the risk of flight, essentially because he might hang out

11   with people who think the same things that he does, and, in

12   some way you have not yet made clear to me, that might

13   ultimately persuade him to never come back to this country.

14       I'm not sure I understand how the connection is made.

15           MR. WEXLER:  Your Honor, I'm not trying to say that

16   simply by being on the cruise he will be persuaded to not come

17   back to this country.  What I'm saying is that the

18   circumstances the defendant now finds him under will persuade

19   him to not come back to this country and that the cruise

20   provides him an opportunity to do that.

21           THE COURT:  Sure.  He -- was he under indictment in

22   this Utah case?

23           MR. WEXLER:  No, Your Honor.  He was subpoenaed as a

24   witness in that case.

25           THE DEFENDANT:  Your Honor, that's not correct.  I

1    was never subpoenaed in any case to be a witness to anything.

2          THE COURT:  Okay.  All right.  Thank you.

3          MR. INIGUEZ:  Judge, if I could only say a few

4    things.  It's a cruise.  It's a seven-day cruise.  He goes to

5    Mexico and comes back.  You're right.  He's had those plans for

6    some time.  Maybe it doesn't sound like a lot of money to some

7    folks, but a couple thousand dollars he would lose for that.

8    There's no indication that he would flee, and I think he will

9    tell the Court, if you ask him -- he will give you his

10   assurance he has every intention to appear for all proceedings

11   related to this matter.  I think we can take his word.

12   67 years old.  There's nothing in the record to suggest that

13   he's going to flee.  He's never fled, so --

14         THE COURT:  Mr. Shrout, if you get on that boat and

15   you take your seven-day cruise around Mexico, are you coming

16   back here?

17         THE DEFENDANT:  I promise to come back and make an

18   appearance any time you have a hearing.

19         THE COURT:  Mr. Wexler, I think, given what I've

20   heard so far, your description of charges and the rationale

21   underlying the conduct upon which the charges are based, it

22   seems pretty clear to me that Mr. Shrout has every intention of

23   coming back and continuing to engage with you in this case.

24       I don't get any sense from anything I've seen either in

25   the record or what I've heard here in court today that he's not

going to come back if he goes on this cruise.  I don't think

he's a risk of flight.  I think he will come back.  In fact, I

think he's looking forward to coming back, from what I can

tell, and I don't believe he's a risk of flight even if he goes

on this cruise to Mexico.

On the issue of economic harm, let me tell you what I'm

thinking about that, and then you can respond specifically.

If I release him on his own recognizance, as with any

other defendant, as with Mr. Proudfoot, who was previously --

who was the case just before Mr. Shrout, that doesn't relieve a

defendant from the obligation to abide by all laws.

So if he were engaging in forms of non-reportable income,

that would, as you pointed out, be a violation of law.  I'm not

sure I need to have a written condition that tells him exactly

that.  It's already what he's required to do, and it could

affect his pretrial release status.

I want to make sure I don't misunderstand the argument

you've made.  I don't -- I don't think I heard anything to

suggest that right now the government has a concern that

Mr. Shrout is engaging in activities which may be the basis of

additional misdemeanor charges or other crimes that might be

brought by the government.

Am I right about that, or did I misunderstand?

MR. WEXLER:  I think that perhaps goes a little bit

too far --

1           THE COURT:  Okay.

2           MR. WEXLER:  -- from what I was saying, Your Honor.

3           THE COURT:  Okay.

4           MR. WEXLER:  And I can clarify and say that the

5   special conditions I had outlined were largely focused on the

6   risk of flight.

7           THE COURT:  Yes.

8           MR. WEXLER:  And speaking to the potential for

9   economic harm, I think it's sufficient that the Court simply

10  admonition the defendant regarding the compliance with laws;

11  but I would also ask that the Court specifically address the

12  criminal act codified under 18 U.S.C. 1521 of filing false

13  liens.  I believe that the defendant's actions in regard to

14  these letters, in which the letters are styled as commercial

15  liens -- and I have them all here if the Court would like to

16  review them --

17          THE COURT:  I've -- I've seen similar documents.

18  Thank you.

19          MR. WEXLER:  -- are an indication of that type of

20  activity, and so a specific admonishment is called for.

21          THE COURT:  All right.  Thank you.

22      All right.  Mr. Shrout, I'm going to follow the

23  recommendation of the pretrial services officer.  I'll release

24  you on your own recognizance.  You were here as I talked to

25  Mr. Proudfoot about what that means, but I'll go through it

1    again just to make sure that it's clear on the record in this

2    case.

3         What it means is there are no specific conditions for your

4    pretrial release except that you have to make all your court

5    appearances and make sure you respond to whatever requests or

6    orders or scheduling events that the Court has for your case

7    and you have to obey all the laws -- local, state, and federal.

8    There are a lot of laws out there -- local, state, and

9    federal -- as you probably are aware.  Mr. Wexler has brought

10   to the fore one or two of those that he has particular concerns

11   about.

12        As a judge, I can't give you legal advice, and I'm not

13   purporting to do that.  I will just tell you this:  While

14   you're on pretrial release and while your case is pending, you

15   have to obey all the laws -- local, state and federal.  If the

16   government charges you with violating any law -- local, state,

17   or federal -- and they establish the violation to a sufficient

18   probability, at least some of the things that could happen is

19   your pretrial release could be revoked or conditions could be

20   imposed; whereas, now you don't have any conditions pending

21   that govern your release except to obey the laws; or the

22   government, if it believes it has sufficient basis to do so,

23   could use any of those behaviors or conducts as the basis for

24   additional charges against you.

25        So I'm just telling you that because that comes under the

1    umbrella of obeying all the laws -- local, state, and

2    federal -- while you're out there.  That's pretty much it.

3        Do you have any questions about that?

4            THE DEFENDANT:  Not about that, but I have another

5    request.

6            THE COURT:  Go ahead.

7            THE DEFENDANT:  I request an appearance bond at no

8    cost to myself.

9            THE COURT:  That is not a condition of your -- of

10   your release.  Release on your own recognizance means all you

11   have to do is make sure you make your court appearances, so

12   there is no appearance bond required.

13           THE DEFENDANT:  Okay.

14           THE COURT:  All right.  The only other thing I need

15   to do is set a date for the next hearing before Judge Jones to

16   make sure that the matter moves along.

17       Here is what I'm going to do at this time:  As I think the

18   lawyers know, I don't have access to the district judge's

19   calendars, except for purposes of setting supervised release

20   violation hearings.  So what I'm going to do is set a status

21   conference before Judge Jones on one of the two days of the

22   week.  Wednesday or Thursday he typically hears supervised

23   release violations.

24       Now, Mr.Shrout, as I understand it, you leave on the 24th;

25   correct?

```
 1              THE DEFENDANT:  I don't recall.  It's either the 22nd

 2    or the 24th.  I think it's actually the 22nd.  Is that a

 3    Sunday?

 4              THE COURT:  The 22nd is a Friday.  The 24th is a

 5    Sunday.

 6              THE DEFENDANT:  Okay.  It would be the 24th.  It

 7    leaves on a Sunday.

 8              THE COURT:  Today is the 7th.

 9              THE DEFENDANT:  It leaves from California, by the

10    way.

11              THE COURT:  When are you leaving for California?

12              THE DEFENDANT:  I'm not quite sure if I'm going --

13    well, I'm not sure about my means of transportation, so it

14    would be probably a couple of days before that at least.

15              THE COURT:  So let me ask you this question:  If I

16    set the matter for a status hearing before Judge Jones on

17    Wednesday the 20th, could you appear?

18              MR. INIGUEZ:  I think the preference, Your Honor,

19    would be to do it once he returns.  And if I'm going to be

20    here, I'm going to be gone that day, the 20th.

21              THE COURT:  What about Wednesday the 3rd of February?

22              MR. INIGUEZ:  That would -- that would work.

23              THE COURT:  Mr. Shrout?

24         All right.  Mr. Shrout has indicated he can appear before

25    Judge Jones on Wednesday, February 3rd, at 9:30 a.m.
```

1      Judge Jones's courtroom is in this building on the 10th

2  floor, and that will be the time for the next hearing in the

3  case.  I'm going to set it as a status hearing and then all

4  matters the parties wish to address to Judge Jones at that time

5  regarding the case and further proceedings can be taken up.

6      So Wednesday, February 3, 2016, at 9:30, before

7  Judge Jones.

8      All right.

9          MR. WEXLER:  Your Honor?

10          THE COURT:  Yes, Mr. Wexler.

11          MR. WEXLER:  If I may, I would just like to note for

12  the record that there's been no plea entered in this case as

13  of -- I don't think that --

14          THE COURT:  Sure.

15          MR. WEXLER:  -- Mr. Iniguez entered a plea of not

16  guilty on Mr. Shrout's behalf.  And I know it's customary in

17  this jurisdiction to order discovery within 14 days.  However,

18  I don't know that that's appropriate --

19          THE COURT:  Yes, I --

20          MR. WEXLER:  -- given that hearing is occurring after

21  the 14-day time period.

22          THE COURT:  I -- I agree.  So --

23          THE DEFENDANT:  I'm not understanding what he just

24  said.

25          THE COURT:  Let me see if I can be clear about it.

1          MR. WEXLER:  Okay.

2          THE COURT:  There are two things we always do at

3    these initial appearances, Mr. Shrout, that we haven't really

4    done yet.  One is I haven't ordered the parties -- the

5    government to give discovery, the parties to exchange

6    information, within the 14-day time period.  Mr. Wexler thinks

7    that's probably not workable in this particular case until at

8    least we have the status hearing on February 3rd.  I think he's

9    right.  So at this time, unless you have concerns, I will not

10   order the government to produce discovery within 14 days.

11         THE DEFENDANT:  Oh, I don't need discovery.

12         THE COURT:  Okay.  So any further issues about

13   discovery you can take up with Judge Jones on February 3rd.

14         THE DEFENDANT:  Sure.

15         THE COURT:  The second thing, I know what you told me

16   earlier about entering a plea.  Here is what I think the best

17   thing would be to do -- and, Mr. Iniguez, I am interested to

18   hear from you, and, Mr. Wexler, from you.  We can do one of two

19   things.  Mr. Shrout, we can enter a not guilty plea until you

20   see Judge Jones on the 3rd, or we can defer your entry of a

21   plea --

22         THE DEFENDANT:  I'm going to enter.

23         THE COURT:  -- until you see Judge Jones on the 3rd.

24   I'm sorry?

25         THE DEFENDANT:  Okay.  I'm sorry.  Go ahead.

1          THE COURT:  Or we can defer your entry of a plea

2     until you see Judge Jones, because this is his case, on

3     February 3rd.

4        What do you think about that?

5          THE DEFENDANT:  I think that would be the best idea.

6          THE COURT:  Mr. Wexler, any concerns about deferring

7     the defendant's entry of a plea in a case until February 3rd?

8          MR. WEXLER:  I can't think of any, Your Honor, so I

9     would be fine with that.

10          THE COURT:  All right.  So we'll defer the entry of a

11    plea on the defendant's behalf until the matter is before

12    Judge Jones on February 3rd.  I think that takes care of

13    everything.

14        Mr. Shrout, do you have any other questions?

15          THE DEFENDANT:  Not at this time.

16          THE COURT:  All right.  Thank you.

17        Mr. Wexler, thank you.

18          MR. WEXLER:  Thank you.

19          MR. INIGUEZ:  Thank you, Judge.

20          THE COURT:  Oh, Mr. Shrout, I have an order that says

21    you can go on your own recognizance, and I need you to sign

22    that before you leave today.  So I'll sign it, and then you can

23    sign it.

24          MR. WEXLER:  You Honor, can I reopen the matter just

25    briefly?

1          THE COURT:  Go ahead, Mr. Nischik.

2          PRETRIAL SERVICES OFFICER:  Your Honor, I was just

3   going to mention that the defendant will need to be processed

4   by the marshals service.

5          THE COURT:  Because of the summons?

6          PRETRIAL SERVICES OFFICER:  Because of the summons.

7          THE COURT:  That's right.  I forgot about that.

8      Before I talk to Mr. Shrout again, Mr. Wexler, go ahead.

9          MR. WEXLER:  Just, Your Honor, there was a request in

10  the pretrial report that as a condition of the defendant being

11  released on his own recognizance that he provide an address of

12  contact information.

13         THE COURT:  Right.

14         MR. WEXLER:  I just would like the Court to reiterate

15  that requirement.

16         THE COURT:  Right.  So, Mr. Shrout, I'm sorry.  There

17  are two other things.

18         THE DEFENDANT:  Okay.

19         THE COURT:  The first thing is I need you to give

20  some contact information to pretrial services so we know where

21  to send things and let you know when hearings are happening.

22  Typically, that's an address, a phone number, and an email

23  address.  That's what people typically provide.

24         THE DEFENDANT:  So you can actually email, though,

25  instead of hard mailing them?

1          THE COURT:  Not necessarily.

2          THE DEFENDANT:  That would be the easiest.

3          THE COURT:  For email service?

4          THE DEFENDANT:  Sure.

5          THE COURT:  Well, all right.  If you just provide

6    your address, phone number, and email address to Mr. Nischik,

7    then we'll get that into the record, and things can be sent to

8    you.

9          THE DEFENDANT:  Like I said, I mean, up until today,

10   until I came to the clerk's office to get a copy of the

11   indictment, I never had any receipt of that, you know, on email

12   or hard mail.

13         THE COURT:  Our practice here is typically when a

14   party does not have a lawyer of record in a case, the clerk's

15   office mails things to the address.  That's their practice.

16   They really don't have the capacity to email.  Lawyers do and

17   sometimes they exchange documents that way, but the clerk's

18   office really doesn't have the capacity to do that, so they

19   mail hard copies to your physical address.  Is that okay?

20         THE DEFENDANT:  Of course it is.  They sent the

21   summons to that address.

22         THE COURT:  Okay.  Good.  So we'll get your most

23   recent address, phone number, with -- with Mr. Nischik, before

24   you leave.

25         I have the order here as well.

1    Mr. Wexler, you raised a point, and I think I forgot it

2    already.

3         MR. WEXLER:  I -- I think that was my point,

4    Your Honor; just that the pretrial had asked for that address

5    in order for him to be released.

6         THE COURT:  Mr. Nischik, what was your point?  Was

7    that the same thing, or was it different?

8         PRETRIAL SERVICES OFFICER:  The marshals.

9         MR. WEXLER:  The marshals.

10        THE COURT:  Oh, right.  Mr. Shrout, because there was

11   a summons issued, the marshals service has to process you so

12   that the summons is satisfied and all the --

13        THE DEFENDANT:  What does that entail?

14        THE COURT:  Not much.  It doesn't mean you're going

15   to be detained or anything.  There's just some paperwork to

16   fill out.  It shouldn't take you too long.

17        Mr. Iniguez can talk to you about that and what's

18   involved.

19        THE DEFENDANT:  Okay.

20        THE COURT:  I'm sure it won't take very much time.

21        All right.  Mr. Gale, would you hand this to Mr. Shrout,

22   please.

23        Thank you.

24        THE DEFENDANT:  Do I get a copy of this?

25        MR. INIGUEZ:  Yes, you will.

1                    THE COURT:  Thank you.  We're adjourned.

2                         (FTR-recorded hearing concluded.)

```
 1                     C E R T I F I C A T E

 2

 3            United States of America v. Winston Shrout

 4                        3:15-cr-00438-JO-1

 5                         FIRST APPEARANCE

 6                         January 7, 2016

 7

 8            I certify, by signing below, that the foregoing is a

 9    true and correct transcript of the FTR-recorded hearing, taken

10    by stenographic means, via FTR recording, of the proceedings in

11    the above-entitled cause.  A transcript without an original

12    signature, conformed signature, or digitally signed signature

13    is not certified.

14

15    /s/Jill L. Jessup, CSR, RMR, RDR, CRR

16    _____
      Official Court Reporter       Signature Date: 9/22/16
17    Oregon CSR No. 98-0346        CSR Expiration Date:  3/31/17

18

19

20

21

22

23

24

25
```