**Ruben L. Iñiguez**
**Assistant Federal Public Defender**
101 SW Main Street, Suite 1700
Portland, OR  97204
Tel: (503) 326-2123
Fax: (503) 326-5524
Email: ruben_iniguez@fd.org
**Advisory Counsel for** *Pro Se* **Defendant**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Case No. 3:15-cr-00438-JO |
| Plaintiff, | MOTION TO DISMISS FOR VINDICTIVE PROSECUTION |
| vs. | |
| **WINSTON SHROUT,** | [HEARING REQUESTED] |
| Defendant. | |

The *pro se* defendant, Winston Shrout, through advisory counsel, Ruben L. Iñiguez, moves the Court to enter an Order dismissing Counts 1 through 13 of the Superseding Indictment [ECF 16] for vindictive prosecution.  Undisputed evidence indicating "a realistic or reasonable likelihood of vindictiveness" exists in this case.  As a result, there is a "presumption of vindictiveness on the government's part."  In order to

Page 1 –MOTION TO DISMISS FOR VINDICTIVE PROSECUTION

rebut the presumption, the government must show that "independent reasons or intervening circumstances dispel the appearance of vindictiveness and justify its decisions" to increase the severity of the alleged charges by re-indicting Mr. Shrout in response to his exercise of constitutional, statutory, or procedural rights.

I.         PROCEDURAL HISTORY AND STATEMENT OF FACTS.

        A.         The Misdemeanor Indictment.

On December 8, 2015, the government filed an Indictment against Mr. Shrout. ECF 1. The Indictment charged him with six misdemeanor violations of Title 26, United States Code, Section 7203 (willful failure to file tax return). The Indictment specifically alleged that he "willfully failed … to make an income tax return" for six consecutive years, namely, from 2009 to 2014. ECF 1. The statutory maximum penalties for each class A misdemeanor are one year imprisonment, one year supervised release, a $25,000 fine, and a $25 special fee assessment. *See* 18 U.S.C. §§ 3013(a)(1)(A)(iii) and 3583(b)(3); and 26 U.S.C. § 7203.

Later that same day, Internal Revenue Service Special Agent Casey Hill personally served Mr. Shrout with a Summons in a Criminal Case. ECF 6. The Summons notified Mr. Shrout that he was to appear before U.S. Magistrate Judge John V. Acosta in Portland "to answer" the Indictment on January 7, 2016. *Id*.

### B.       The Initial Appearance.

#### 1.       Mr. Shrout Exercises His Constitutional Rights.

Mr. Shrout appeared in court, as directed, on January 7.  ECF 8.  Exercising his Sixth Amendment right to self-representation, he confirmed he did not "want the Court to appoint any lawyer to represent [him]."  Transcript, attached hereto as Exhibit A, at 5:14-15.  Instead, therefore, Judge Acosta appointed "standby counsel for Mr. Shrout."  *Id*. at 5:20.

At that point, Mr. Shrout expressed his "intention … to plead guilty" to the misdemeanor Indictment.  Exhibit A at 6:14 and 7:2-3.  The Court did not accept his plea.  Judge Acosta instead expressed his "inclination … to set this matter for either a plea hearing or a status hearing before [Senior U.S. District] Judge [Robert E.] Jones."  *Id*. at 8:10-11.  Judge Acosta ultimately "defer[red] the entry of a plea."  *Id*. at 28:10-11.

#### 2.       The Prosecutor's Complaints About Mr. Shrout.

Judge Acosta next addressed the issue of bail.  Exhibit A at 9:5.  Although the Court ultimately denied the request, the government sought to impose several conditions, including travel and employment restrictions.  *Id*. at 9:14-11:19.  During his argument to the Court, the federal prosecutor stated:

> Mr. Shrout, since the indictment in this case, has submitted several documents, both to the Department of Justice, as well as the Internal Revenue Service, as well as the Court.

> Indeed, immediately after the indictment, I was approached outside of this courthouse with a document in which Mr. Shrout alleged that he was not subject to the jurisdiction of this court; that he was a sovereign entity protected by a UN charter.
>
> And, subsequent to being presented with that document, I received via mail, as well as the agent – investigating agent in this case received via mail, a document styled a commercial lien in which [Mr. Shrout] reiterated that he is not subject to the jurisdiction of the federal government and assessed penalties against myself, against Special Agent Hill. I will also note that Your Honor has also been mentioned in that document. Each individual mentioned, as well as acting U.S. Attorney Mr. [Bill] Williams, is liable, according to that document, for $1 trillion to Mr. Shrout.
>
> In addition, after those – those documents provided for three days to comply. After three days, I received a failure-to-comply notice and that the matter was going to be forwarded to the appropriate international authorities.

Exhibit A at 11:24-12:20.

The prosecutor asked "that the Court admonition [Mr. Shrout] regarding these mailings … and also specifically admonition [him] that the filing of false retaliatory liens is a federal crime under 18 U.S.C. 1521." Exhibit A at 13:21-14:10. When Judge Acosta expressed his intention to release Mr. Shrout without conditions on his own recognizance, the prosecutor repeated his request "that the Court specifically address the criminal act codified under 18 U.S.C. 1521 of filing false liens." *Id*. at 22:11-13. "I believe that the defendant's actions in regard to these letters, in which the letters are styled as commercial liens … are an indication of that type of [criminal] activity, and so a specific admonition is called for." *Id*. at 22:13-20.

In the end, the Court ordered Mr. Shrout's release and scheduled an arraignment and "further Status Conference and Plea [Hearing]" for February 3, 2016. ECF 7-8.

### C. Mr. Shrout Exercises His Statutory And Procedural Right To File *Pro Se* Pleadings.

On January 20, 2016, two weeks before the arraignment, Mr. Shrout heeded the federal prosecutor's suggestion and filed two *pro se* pleadings.[1] The first pleading is entitled "Notice of Appointment and Acceptance and Lien and Invoice." ECF 9. The government has described the pleading as "naming the Honorable Judge Jones as [Mr. Shrout's] fiduciary and empowering Judge Jones to pursue payment of the defendant's invoice against the Court of $1 billion, as well as a bogus financial instrument wherein [Mr. Shrout] directs the U.S. Treasury to pay off certain debts of the defendant." ECF 11 at 7.

The second pleading is entitled "Notice of Liquidation." ECF 10. It provides notice that the instant case, 3:15-cr-00438-JO, "is liquidated via the US Secretary of the Treasury." *Id*. Five exhibits are attached, including a "Non-Negotiable Bill of Exchange," "Non-Negotiable Acceptance for Value," and "Currency Exchange" which were delivered to former U.S. Treasury Secretary Jack Lew by registered mail. *Id*.

---

[1] During the January 7 hearing, the prosecutor, while discussing the "commercial lien" that he and the case agent had received in the mail, stated: "Now that this matter is underway, if [Mr. Shrout] has any argument to make, the proper venue for that argument is through the court filing system in the form of a pleading or a motion…." Exhibit A at 14:5-7.

On January 29, the government filed a responsive pleading. *See* ECF 11 (Notice Concerning Arraignment Hearing). Among other things, the prosecutor complained about "the various frivolous documents [Mr. Shrout] has both filed and mailed to the government." *Id*. at 8. He characterized Mr. Shrout's *pro se* pleadings as "frivolous and threatening documents" and requested "that the Court additionally admonish the defendant concerning these communications." *Id*. at 11.

The government affixed three attachments to its pleading. *See* ECF 11. Attachment A consists of three separate documents. First, a one-page letter dated December 8, 2015, from Mr. Shrout to the government's lead attorney, Stuart A. Wexler, "and all US Attorneys and employees." The letter states that Mr. Shrout is "an internationally protected person under sovereign immunity" and requests that the prosecutors "Cease and Desist immediately any and all procedures against [him]."

The second document is a three-page letter to former U.S. Attorney General Eric Holder from Dr. Ray C. Dam. It notes that the Office of International Treasury Control (OITC) has "appointed as Notary Exequateur, Mr. Winston Shrout."

The third document that forms Attachment A is a certificate issued by the OITC entitled "Notary Exequatur."

The government's Attachment B is a five-page document entitled "Affidavit of Obligation Commercial Lien." The government describes this document as "a monetary

claim against numerous federal government and Court officials totaling $7 trillion." ECF 11 at 7.[2]

Finally, the government's Attachment C is a copy of an "Order Clarifying Role of Defense Counsel" filed in a similar case in the District of Oregon. ECF 11.

### D. The Arraignment And *Faretta* Hearing.

#### 1. Mr. Shrout Exercises His Constitutional Rights.

On February 3, 2016, Mr. Shrout appeared for arraignment, as directed, before Judge Jones. ECF 12. The Court first conducted a *Farettta* hearing. Transcript, attached hereto as Exhibit B, at 8:3-12:1. Again, Mr. Shrout exercised his Sixth Amendment right to represent himself. *Id*. at 5:11-12 and 12:2-3. The Court found that he "waived his [constitutional] right to representation of counsel," and authorized him to "proceed pro se with the Federal Defender present as advisory counsel." ECF 12.

#### 2. Mr. Shrout Attempts To Exercise His Right To Plead Guilty.

After the prosecutor recited the six misdemeanor charges, the Court asked Mr. Shrout whether he wished "to plead guilty or not guilty." Exhibit B at 18:6. Mr. Shrout responded: "On behalf of the defendant, I plead guilty to the facts." *Id*. at 18:7-8.

---

[2] The Affidavit of Obligation Commercial Lien lists six individuals and one corporation as "Lien Debtor(s)." ECF 11-2 at 4. One of the six individuals is the lead prosecutor, Mr. Wexler. *Id*. The Affidavit purports to assess damages in the amount of "One Trillion dollars per Lien Debtor in any currency other than the Federal Reserve Note." *Id*. at 5.

At that point, advisory counsel requested a brief recess to confer privately with Mr. Shrout. *Id*. at 23:5-6. Following the recess, advisory counsel "request[ed] that the Court enter a not guilty plea on [Mr. Shrout's] behalf and set the case for jury trial." *Id*. at 24:2-3. The Court entered a plea of "not guilty" to the misdemeanor Indictment, scheduled a jury trial, and continued Mr. Shrout's pretrial release. *Id.*

That same day, Mr. Shrout filed another *pro se* pleading, namely, a Notice of Assignment of Reversionary Interest and Status. ECF 13.

### E. The Prosecutor Raises The Possibility Of Additional Felony Charges.

After the arraignment, the federal prosecutor wrote an email to advisory counsel "to summarize our hallway conversation re: discovery and superseding charges." Email dated February 3, 2016, attached hereto as Exhibit C. Mr. Wexler acknowledged that discovery was voluminous "because, in part, Mr. Shrout has been under investigation for an extended period of time." *Id*. He then wrote:

> Evidence acquired during the investigation resulted in the present charges against Mr. Shrout, but also – we believe – may support additional, felony, charges. As a result, the government is actively pursuing a superseding indictment in this case, to include multiple counts of 18 USC 514 (Fictitious Instruments) and potentially a charge of obstruction under 26 USC 7212(a). The 514 charges would reflect criminal activity that has been going on for several years; the 7212(a) charge would potentially reflect obstructive activity dating back to at least 2012. ***The timing of the superseding indictment is uncertain, as the government is waiting on the return of subpoenas***. We hope, however, to go before the grand jury by late March or early April.

Exhibit C (emphasis added).

      F.      **The Felony Superseding Indictment.**

On March 15, less than 100 days after it filed the original Indictment, the government filed a Superseding Indictment. ECF 17. Unlike the original Indictment, which charged Mr. Shrout with six offenses, the Superseding Indictment more than tripled the number of charges, increasing the total number to 19. *Id*. More importantly, whereas the original Indictment charged only misdemeanors, the Superseding Indictment added 13 felony violations of Title 18, United States Code, Section 541 (fictitious obligations). *Id*. The statutory maximum penalties for each class B felony are 25 years' imprisonment, five years' supervised release, a $250,000 fine, and a $100 special fee assessment. *See* 18 U.S.C. §§ 514(a), 3013(a)(2)(A), 3571(b)(3), and 3583(b)(1). [3]

On March 31, Mr. Shrout appeared for arraignment on the Superseding Indictment pursuant to a summons. ECF 26. At the government's request (ECF 24), the Court first conducted another *Farettta* hearing. *Id*. Again, the Court found that Mr. Shrout waived his constitutional right to representation by counsel and authorized him to "proceed Pro Se with Assistant Federal Public Defender Ruben L. Iniguez appointed as advisory

---

[3] The class B felonies charged by the government in the Superseding Indictment consists of: (1) seven violations of Title 18, United States Code, Section 541(a)(1); (2) three violations of Title 18, United States Code, Section 541(a)(2); and (3) three violations of Title 18, United States Code, Section 541(a)(3).

Page 9 –MOTION TO DISMISS FOR VINDICTIVE PROSECUTION

counsel." *Id*. The Court declared the case "complex," entered Mr. Shrout's pleas of "not guilty" to all 19 counts, and rescheduled the jury trial. *Id*.

### G. The Government's Plea Offer.

On May 10, 2016, the government forwarded "an initial [plea] offer … intended for <u>discussion purposes only</u>" to Mr. Shrout and advisory counsel. The government did not offer to recommend a particular sentence in exchange for Mr. Shrout's agreement to plead guilty to two of the 13 felony counts alleged in the Superseding Indictment. However, it calculated the advisory Sentencing Guidelines range as "151-188 months (assuming Crim. Hist. I)."

## II. MOTION TO DISMISS FOR VINDICTIVE PROSECUTION.

"Vindictive prosecution violates due process." *Rushdan v. Schriro*, -- F.Supp.2d --, 2010 WL 7508269, *8 (9th Cir. 2010) (citing *Moran v. Burbine*, 475 U.S. 412, 466 (1986)). "[T]he mere filing of an indictment can support a charge of vindictive prosecution." *United States v. Hooton*, 662 F.2d 628, 634 (9th Cir. 1981). In most cases, however, a "claim of vindictive prosecution usually arises when the government increases the severity of alleged charges—for example, by re-indicting a defendant—in response to the exercise of constitutional or statutory rights." *Id*. at 633. *See also United States v. Montoya*, 45 F.3d 1286, 1299 (9th Cir. 1995) ("most vindictive prosecution cases involve re-indictment of a defendant.").

"To establish a prima facie case of vindictive prosecution, [a defendant] 'must show either direct evidence of actual vindictiveness or facts that warrant an appearance of such.'" *United States v. Edmonds*, 103 F.3d 822, 826 (9th Cir. 1996) (quoting *Montoya*, 45 F.3d at 1299). "Evidence indicating a realistic or reasonable likelihood of vindictiveness may give rise to a presumption of vindictiveness on the government's part." *United States v. Garza-Juarez*, 992 F.2d 896, 906 (9th Cir. 1993). *See also Hooton*, 662 F.2d at 633 ("the mere appearance of vindictiveness gives rise to a presumption of vindictive motive"). "Upon such a showing, the prosecution has the burden of proving that 'independent reasons or intervening circumstances dispel the appearance of vindictiveness and justify its [prosecutorial] decisions.'" *Edmonds*, 103 F.3d at 826 (quoting *Montoya*, 45 F.3d at 1299). *See also Hooton*, 662 F.2d at 633.

    **A.**    **Due Process Requires The Dismissal Of The 13 Felony Charges Alleged In The Superseding Indictment Because No Independent Reasons Or Intervening Circumstances Dispel The Appearance Of Vindictiveness Or Justify The Prosecutor's Decision To Seek Them.**

The procedural history and facts set forth above establish a prima facie case of prosecutorial vindictiveness. They amply demonstrate a "reasonable likelihood of vindictiveness." *Garza-Juarez*, 992 F.2d at 906. The government's initial filing of the misdemeanor Indictment on December 8, 2015, was the culmination of an extensive and lengthy investigation into Mr. Shrout's activities as a "tax protestor." By that point, the investigation had lasted several years. Yet it was only after Mr. Shrout exercised his constitutional, statutory, and procedural rights to waive his right to counsel, represent

himself, and file *pro se* pleadings that the prosecutor decided to up the ante and supersede with 13 additional felony charges.

There are no "independent reasons or intervening circumstances" to dispel the appearance of vindictiveness that exists by virtue of the prosecutor's decision to respond to Mr. Shrout's decisions to waive counsel, represent himself, and file *pro se* pleadings with a Superseding Indictment that more than tripled the number of charges against him, added 13 felonies to the six misdemeanors initially charged, and increased by 2400% the potential term of imprisonment he now faces, if convicted. In fact, after an exhaustive examination of the voluminous discovery materials produced by the government, the defense has been unable to locate any return of any subpoena that occurred after the initial Indictment was filed.[4] An examination of the events between the first indictment on December 8, 2015, and the superseding indictment on March 15, 2016, are more than sufficient to give rise to a presumption of vindictiveness in this case.

Having sustained his burden to present undisputed evidence that gives rise to "a presumption of vindictive motive," *Hooton*, 662 F.2d at 633, the burden now shifts to the government to prove that "independent reasons or intervening circumstances … dispel the appearance of vindictiveness" and justify its prosecutorial decisions. *Garza-Juarez*,

---

[4] When the prosecutor first informed advisory counsel that the government was "actively pursuing a superseding indictment," he unequivocally claimed that the "timing" of the charging decision was "uncertain, as the government is waiting on the return of subpoenas." Exhibit C.

**Page 12** –MOTION TO DISMISS FOR VINDICTIVE PROSECUTION

992 F.2d at 906 (quoting *Gallegos-Curiel*, 681 F.2d at 1168). If the government is unable to sustain its burden, the 13 felony charges alleged in the Superseding Indictment must be dismissed.[5]

### III.   CONCLUSION.

For the foregoing reasons, Mr. Shrout requests that the Court dismiss Counts 1 through 13 of the Superseding Indictment. The case should proceed to trial on the six remaining misdemeanor charges which were originally charged in the Indictment.

RESPECTFULLY SUBMITTED this 6th day of March, 2017.

>    /s/ Ruben L. Iñiguez
>    Ruben L. Iñiguez
>    Advisory Counsel for *Pro Se* Defendant

---

[5] In determining whether to file the instant motion, advisory counsel provided an earlier draft to opposing counsel. In response, the government produced information not previously produced in discovery. The government will apparently attempt to sustain its burden to dispel the appearance of vindictiveness by asserting that a single document that was received by the U.S. Treasury Department in June 2015, but was not forwarded to the case agent until November 2015, caused it to reassess its charging decision after the initial indictment was returned.