**Ruben L. Iñiguez**
**Assistant Federal Public Defender**
**101 SW Main Street, Suite 1700**
**Portland, OR 97204**
**Tel: (503) 326-2123**
**Fax: (503) 326-5524**
**Email: ruben_iniguez@fd.org**
**Advisory Counsel for *Pro Se* Defendant**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **Case No. 3:15-cr-00438-JO** |
| **Plaintiff,** | **REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR VINDICTIVE PROSECUTION** |
| **vs.** | |
| **WINSTON SHROUT,** | |
| **Defendant.** | **[HEARING REQUESTED]** |

The *pro se* defendant, Winston Shrout, through advisory counsel, Ruben L. Iñiguez, submits this reply memorandum in support of his Motion to Dismiss Counts 1 through 13 of the Superseding Indictment for Vindictive Prosecution. ECF 73.

An examination of the undisputed events surrounding the filing of the initial indictment on December 8, 2015, and the superseding indictment on March 15, 2016, are more than sufficient to give rise to a presumption of vindictiveness in this case. Because evidence indicating "a realistic or reasonable likelihood of vindictiveness" exists, there is a "presumption of vindictiveness on the government's part." *United States v. Garza-Juarez*, 992 F.2d 896, 906 (9th Cir. 1993).

The government offers no evidence to rebut the presumption of vindictiveness or to show that "independent reasons or intervening circumstances dispel the appearance of vindictiveness" and justify the prosecutor's decision to increase the severity of the charges by re-indicting Mr. Shrout in response to his exercise of constitutional, statutory, and procedural rights. *United States v. Hooton*, 662 F.2d 628, 634 (9th Cir. 1984). The government having failed to sustain its burden of proof, the 13 felony charges set forth in the Superseding Indictment must be dismissed.

## ARGUMENT

### I.    THE GOVERNMENT MISSTATES THE LEGAL STANDARD THAT GOVERNS A VINDICTIVE PROSECUTION CLAIM.

As an initial matter, it is important to note that the government misstates the legal standard that applies in analyzing a due process claim of vindictive prosecution. Contrary to its assertion, the courts do not require a defendant to present "exceptionally

clear proof."   ECF 74 (Government's Response, hereinafter referred to as "GR") at 4

(quoting *McCleskey v. Kemp*, 481 U.S. 279, 297 (1987)).

The government quotes the Supreme Court's decision in *McCleskey* as support for

its claim "that 'exceptionally clear proof' is required before a court may infer an abuse of

prosecutorial discretion."   GR at 4.   The government is mistaken.   *McCleskey* did not

involve a due process claim of vindictive prosecution.   The habeas corpus petitioner in

*McCleskey*, a black man who was convicted of armed robbery and murder and sentenced

to death in Georgia, alleged an equal protection violation, that is, purposeful racial

discrimination.   *See* 481 U.S. at 286 ("His petition raised 18 claims, one of which was that

the Georgia capital sentencing process is administered in a racially discriminatory

manner").   Expressly acknowledging "[t]he unique nature of the decisions at issue in this

case," the Supreme Court narrowly held that a statistical study that purported to show a

disparity in the imposition of the death sentence in Georgia based on the race of the victim

and the defendant (*i.e.*, the Baldus study) was "clearly insufficient to support an inference

that any of the decisionmakers in McCleskey's case acted with [racially] discriminatory

purpose."   *Id*. at 297.[1]

_____

[1] The government also cites *Nunes v. Ramirez-Palmer*, 485 F.3d 432, 441 (9th Cir. 2007), for the ambiguous proposition that "a defendant who contends that a prosecutor made a charging decision in violation of [his] rights has *a demanding standard of proof*."   GR at 4 (emphasis added).   Although one of the claims in *Nunes* concerned prosecutorial vindictiveness, the relevant language that the government paraphrases is actually a quote from *United States v. Armstrong*, 517 U.S. 456, 463 (1996).   *See* 485 F.3d at 441 (quoting *Armstrong*). However, the Supreme Court in *Armstrong* was not addressing a vindictive prosecution claim.   Rather, in

## II.   THE CORRECT LEGAL STANDARD THAT GOVERNS A VINDICTIVE PROSECUTION CLAIM.

The correct legal standard governing a claim of vindictive prosecution is well established.  A defendant can establish a *prima facie* case of vindictive prosecution in either of two ways.  First, "by producing direct evidence of the prosecutor's punitive motivation."  *United States v. Jenkins*, 504 F.3d 694, 699 (9th Cir. 2007).  Second, by showing that the circumstances establish "a reasonable likelihood of vindictiveness."  *United States v. Goodwin*, 457 U.S. 368, 373 (1982).  *See also United States v. Kent*, 649 F.3d 906, 912 (9th Cir. 2011).  "Evidence indicating a realistic or reasonable likelihood of vindictiveness may give rise to a presumption of vindictiveness on the government's part."  *Garza-Juarez*, 992 F.2d at 906.  *See also Hooton*, 662 F.2d at 633 ("the mere appearance of vindictiveness gives rise to a presumption of vindictive motive").

Once a presumption of vindictive motive arises, "the prosecution has the burden of proving that 'independent reasons or intervening circumstances dispel the appearance of vindictiveness and justify its decisions.'"  *United States v. Edmonds*, 103 F.3d 822, 826 (9th Cir. 1996) (quoting *United States v. Montoya*, 45 F.3d 1286, 1299 (9th Cir. 1995)); *Hooton*, 662 F.2d at 634.

---

making the statement referenced by the government, the court was addressing an equal protection claim of selective prosecution based on race.

## III.   THE UNDISPUTED CIRCUMSTANCES OF THIS CASE ESTABLISH A "REASONABLE LIKELIHOOD OF VINDICTIVENESS."

The government misapprehends the nature of the showing that Mr. Shrout must make to establish a *prima facie* case of vindictive prosecution.  It suggests that no appearance of vindictiveness exists because Mr. Shrout has made "no allegations as to why the Government would be motivated to seek additional charges to punish [him]." GR at 6.  Contrary to the government's assertion, Mr. Shrout has no burden to discern the motive underlying the prosecutor's vindictive actions.  As previously noted, his only obligation is to show that the circumstances establish "a reasonable likelihood of vindictiveness."  *Goodwin*, 457 U.S. at 373; *Kent*, 649 F.3d at 912.

The following undisputed circumstances are more than sufficient to give rise to a reasonable likelihood of vindictiveness.

1.   The government "has been investigating [Mr. Shrout] for potential [felony] violations of 18 U.S.C. § 514 *since at least June 2012*."  GR at 7 (emphasis added).[2]

2.   In June 2012, the government obtained a search warrant based on a judicial finding of probable cause that Mr. Shrout had violated 18 U.S.C. § 514.  GR at 7.

3.   The Affidavit of SA Hill contains an entire section entitled, "Fictitious Financial Instruments Scheme."  *See* Affidavit of IRS Special Agent Casey

---

[2] In fact, the evidence establishes that the government's investigation of Mr. Shrout commenced at least three years earlier, that is, in April 2009.  *See* Affidavit of IRS Special Agent Casey Hill filed June 21, 2012, in *In the Matter of the Search of Laptop Computer in the Possession of Winston Shrout*, (Case No. 12-MC-232) at ¶¶ 45-52.

Hill filed June 21, 2012, in *In the Matter of the Search of Laptop Computer in the Possession of Winston Shrout*, (Case No. 12-MC-232) at ¶¶ 23-33.

4.    On December 8, 2015, at least 3 ½ years after the government began investigating Mr. Shrout for potential felony violations of 18 U.S.C. § 514, it presented its evidence to a grand jury.

5.    The government did not seek to indict Mr. Shrout on any felony, including a violation of 18 U.S.C. § 514.

6.    On December 8, 2015, the grand jury returned an indictment charging Mr. Shrout with six misdemeanor violations of 26 U.S.C. § 7203 (willful failure to file tax return).  *See* ECF 1-2.

7.    Immediately after the grand jury returned the indictment, the federal prosecutor, Stuart A. Wexler, was "approached outside th[e] courthouse with a document in which Mr. Shrout alleged that he was not subject to the jurisdiction of th[e] court; that he was a sovereign entity protected by UN charter."  ECF 73, Exhibit A at 12:2-6.  *See also* ECF 11, Exhibit A.

8.    That same day, December 8, 2015, SA Hill personally served Mr. Shrout with a summons to appear in court on January 7, 2016.  *See* ECF 6.

9.    Prior to his court appearance, Mr. Shrout mailed "commercial liens" to several individuals, including Mr. Wexler and SA Hill.  ECF 73, Exhibit A at 12:7-12.  *See also* ECF 11, Exhibit B.

10.    When Mr. Shrout appeared in court on January 7, 2016, he exercised his constitutional right to self-representation and expressed his "intention … to plead guilty" to the misdemeanor indictment.  ECF 73, Exhibit A at 6:14.

11.    During the hearing, Mr. Wexler complained about the papers Mr. Shrout had mailed to him and the agent.  ECF 73, Exhibit A at 11:23-14:10.  He characterized the papers as "false retaliatory liens," alleged that Mr. Shrout had committed "a federal crime under 18 U.S.C. § 1521," and requested a "specific admonishment" from the court.  ECF 73, Exhibit A at 14:9-10 and 22:20.

12.    Mr. Wexler also claimed, "All of this activity echoes activity that Mr. Shrout took in a case … in the state of Utah in 2014." ECF 73, Exhibit A at 13:2-3. He alleged that Mr. Shrout had "responded in 2014 with a [similar] commercial lien" "in response to a search warrant that was executed on himself and associated business premises … in 2012." ECF 73, Exhibit A at 13:11-14.

13.    On January 20, 2016, Mr. Shrout exercised his statutory and procedural rights to file *pro se* pleadings. *See* ECF 9 and 10.

14.    On January 29, 2016, the government filed a responsive pleading. *See* ECF 11. Mr. Wexler complained anew about the pleadings Mr. Shrout had filed. *Id*. at 7. He characterized the pleadings as "threatening" and "frivolous," and asked the court again to "admonish the defendant concerning these communications." *Id*. at 11.

15.    On February 3, 2016, before he appeared for arraignment, Mr. Shrout filed another *pro se* pleading. *See* ECF 13.

16.    Later that same day, Mr. Shrout appeared for arraignment. See ECF 12. He once again exercised his constitutional right to self-representation and, when asked how he wished to plead, stated: "On behalf of the defendant, I plead guilty to the facts." ECF 73, Exhibit B at 5:11-12, 12:2-5, and 18:7-8.

17.    After the arraignment, Mr. Wexler wrote an email to advisory counsel "to summarize our hallway conversation re: discovery and superseding charges." ECF 73, Exhibit C. The email states, "the government is actively pursuing a superseding indictment in this case, to include multiple counts of 18 USC 514 (Fictitious Instruments) and potentially a charge of obstruction under 26 USC 7212(a). The 514 charges would reflect criminal activity that has been going on for several years; the 7212(a) charge would potentially reflect obstructive activity dating back to at least 2012. The timing of the superseding indictment is uncertain, as the government is waiting on the return of subpoenas." *Id*.

18.    On March 15, 2016, after Mr. Shrout exercised his right to self-representation, after the prosecutor unsuccessfully sought court admonishments, and only 98 days after the original Indictment was filed, the government filed a Superseding Indictment. *See* ECF 17. The

Superseding Indictment charges Mr. Shrout with not only the six original misdemeanors, but also 13 new felonies. *Id.*

The government asserts that "the case had barely begun" when the prosecutor, Mr. Wexler, "informed standby counsel [on February 3, 2016,] that [he] was considering additional [felony] charges." GR at 6. The evidence establishes otherwise. Indeed, as the government itself concedes, it had been investigating Mr. Shrout "for several years," and specifically considering felony fictitious-instrument charges, by the time it finally presented its evidence to the grand jury and obtained the misdemeanor indictment on December 8, 2015. Despite the fact that sufficient evidence existed to establish probable cause of fictitious instrument violations in June 2012, the prosecutor chose not to indict Mr. Shrout on those charges in December 2015. And yet, only 57 days later, he changed course and prepared to do exactly that. The question, of course, is this: What changed during those two, short months to cause the prosecutor to seek 13 felony fictitious instrument charges after having chosen to seek none after so many years of investigation?

The prosecutor, Mr. Wexler, volunteered an explanation in his written email to advisory counsel on February 3, 2016. *See* ECF 73, Exhibit C. After acknowledging that Mr. Shrout had been "under investigation for an extended period," he represented that the filing of the superseding indictment was "uncertain, as *the government is awaiting on the return of subpoenas*." *Id*. (emphasis added). The problem with this explanation,

however, is that no evidence of any subpoena returned after February 3, 2016, exists among the discovery materials produced by the government.

The prosecutor's attempt to explain his representation that he was "awaiting on the return of subpoenas" before deciding whether to seek a superseding indictment raises more questions than it answers. For example, Mr. Wexler first avers that he "does not specifically recall what subpoena [he] was referring to in [his] conversation and subsequent email with [advisory] counsel." ECF 74 at 8. He then represents that "two subpoenas were issued by the Grand Jury in this matter in late-February/early March, **2015**." *Id*. (emphasis added). If, however, as Mr. Wexler asserts, the grand jury issued two subpoenas one full year earlier, it is difficult to understand (a) why the subpoenas were still outstanding on February 3, 2016, and (b) why neither the subpoenas nor the returns have been produced in discovery to the defense more than one year later.[3] The government concedes that with the exception of the two unidentified subpoenas that were allegedly issued in 2015, "all other subpoenas had been returned to the Grand Jury prior to February 3 [2016]." GR at 8.

The prosecutor next speculates that he "likely … was either alluding to these [2015] subpoenas or to subpoenas that were contemplated b[ut] not ultimately issued." *Id*. The

---

[3] The government states that "the subpoenas that were issued in February/March [2015] … proved unresponsive: neither party possessed any material relevant to the investigation." GR at 8. It fails, however, to identify the parties served or to provide copies of the subpoenas and returns.

notion that Mr. Wexler, in both his conversation and written email, may have been "alluding" to subpoenas that were "contemplated but not ultimately issued" is particularly difficult to fathom.  The language of his email refutes the suggestion.  He unequivocally wrote that the government was "awaiting on the return of subpoenas," indicating that the subpoenas already had been issued.  ECF 73, Exhibit C.

The government attempts to downplay the significance of the dubious existence of "the subpoenas referenced by the [prosecutor] in [his] conversation [and email] with [advisory] counsel."  GR at 8.  It questions "why the [prosecutor] making this assertion is proof of vindictiveness."  *Id*.  The answer is clear.  While the prosecutor's claim that his decision to file superseding felony charges rested on the return of the still unseen subpoenas is not direct evidence of vindictiveness, it is circumstantial evidence of a potentially vindictive motive.  If the decision to file felony charges did not depend on the subpoena returns, as the prosecutor claimed, then his true motive lies elsewhere.

Contrary to the government's assertion, the foregoing circumstances are more than adequate to establish a reasonable likelihood of vindictiveness.  Considering the prosecutor's difficult, personal history with Mr. Shrout, including the criminal case in Utah in 2014, the "commercial liens" that Mr. Shrout personally served on Mr. Wexler and the case agent, the prosecutor's statement that he perceived the liens to be "threatening," Mr. Shrout's exercise of his constitutional right to self-representation, his repeated attempts to plead guilty to the misdemeanor indictment, his exercise of his

statutory and procedural rights to file *pro se* pleadings, the fact that the prosecutor did

not initially seek felony charges despite several years of investigation that included

evidence of the overwhelming majority of the alleged fictitious instruments, and the fact

that Mr. Wexler abruptly changed course and sought felony charges approximately two

months after Mr. Shrout chose to represent himself and served pleadings on the

prosecutor, Mr. Shrout has established a *prima facie* case for vindictive prosecution.

**IV.     Having Produced No Evidence, The Government Cannot Sustain Its Burden To Show Intervening Circumstances To Dispel The Appearance Of Vindictiveness.**

Despite its acknowledgment that it had been "investigating [Mr. Shrout] for

potential [felony] violations of 18 U.S.C. § 514 since at least June 2012," GR at 7, the

government suggests the proverbial straw that broke the camel's back was a single

document that Mr. Shrout allegedly mailed to the U.S. Treasury Department in June 2015,

more than six months before the prosecution presented its case to the grand jury.  *Id*.  It

asserts the prosecution team's receipt of that one "piece of evidence" led it to change

course and "revisit its case against [Mr. Shrout] for violations of 18 U.S.C. § 514."  *Id*.

Remarkably, the government provides the Court with no evidence, documentary

or testamentary, to support its position.  It does not offer the relevant document.  And it

makes no attempt to prove, by declaration or otherwise, the circumstances or chronology

of events relative to the prosecution team's alleged receipt of the document at or about

the time of the original indictment.[4]  Having introduced no evidence, the government has not sustained its burden of proving intervening circumstances.

The government indicates that the document Mr. Shrout allegedly mailed on June 9, 2015, forms the basis for the two fictitious obligation charges in Counts 10 and 13 of the Superseding Indictment.  *See* GR at 7 (citing ECF 17).  But the Superseding Indictment does not charge Mr. Shrout with only those two felonies.  To the contrary, it also charges him with eleven other felonies.  *See* ECF 17, Counts 1-9 and 11-12.  The government does not suggest that the evidence underlying those eleven felonies is new.  Nor could it. Having possessed the evidence underlying those fictitious obligation charges "for several years," the government fails to allege or prove any "intervening circumstances" to explain the prosecutor's decision to charge those eleven felonies when, only 57 days earlier, he made a completely different decision.

While the government's belated "discovery" of the document that underlies Counts 10 and 13 of the Superseding Indictment might explain why the prosecutor did not charge Mr. Shrout with those two felonies at the time he sought the initial Indictment, it does not explain why he filed eleven additional felonies when the evidence underlying those charges had been known to him for years.  In any event, the government having

---

[4] At the request of advisory counsel, the government recently produced a scanned copy of a one-page document titled "Frivolous Return Program."  The document reflects it was printed on November 25, 2015, approximately two weeks before the prosecution presented its case to the grand jury.

failed to sustain its burden of proof, all 13 felony charges alleged in the Superseding

Indictment must be dismissed.

**V.      In The Alternative, If The 13 Felony Counts Are Not Dismissed On This Showing, The Government Should Produce Any Evidence Concerning The Prosecution Team's Decision To File Superseding Charges, Including Email And Other Correspondence, For *In Camera* Inspection.**

The government makes several relevant assertions, but introduces no evidence to

support them.  For example, it claims (1) "the prosecution team did not become aware of

[the] existence [of the solitary document that underlies Counts 10 and 13 of the

Superseding Indictment] until approximately December 4, 2015," (2) "only [the case

agent] was aware of the existence of the document on December 4," (3) "the prosecutors

… were not aware of the document until [the case agent] showed it to them in person on

December 7," and (4) the case agent "digitized the document and emailed it to attorneys

for the Government on Dec. 10."  GR at 7-8.[5]

The government's mere assertions are plainly insufficient to sustain its burden to

show  intervening  circumstances  to  dispel  the  appearance  of  vindictiveness.

Furthermore, given the absence of evidence to support the prosecutor's initial

explanation for his decision to filing superseding charges (*i.e.*, "awaiting on the return of

---

[5] The government states that "a copy of [the December 10, 2015,] email was provided to [advisory] counsel and [Mr. Shout] on March 1, 2017."  GR at 8, n. 3.  That is not entirely accurate.  Although Mr. Wexler did send a password-protected zip file as an attachment to an email on March 1, the password required to open and review the file was not provided.  As a result, neither advisory counsel nor Mr. Shrout has been able to review the email or verify its receipt by the prosecutors on December 10, 2015.

**Page 13 – REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR VINDICTIVE PROSECUTION**

subpoenas"), it is important that the government be required to disclose all relevant evidence in its possession relative to the decision to file superseding felony charges. The Court should order discovery and schedule a hearing. Only then can Mr. Shrout be assured that the appearance of vindictiveness has been fully and fairly resolved.[6]

## VI.    CONCLUSION.

For each of the foregoing reasons, Mr. Shrout requests that the Court dismiss Counts 1 through 13 of the Superseding Indictment. The case should proceed to trial on the six remaining misdemeanor charges which were originally charged in the Indictment.

In the alternative, if the Court is still inclined to accept evidence from the government to overcome the defense's *prima facie* showing of vindictiveness, Mr. Shrout requests discovery as set forth in Section V, above, as well as an evidentiary hearing on this motion.

RESPECTFULLY SUBMITTED this 27th day of March, 2017.

/s/ *Ruben L. Iñiguez*
Ruben L. Iñiguez
Advisory Counsel for *Pro Se* Defendant

---

[6] Throughout its response, the government refers to communications and decisions made by the lead prosecutor, Mr. Wexler, as if they were made generically by "the Government." *See* GR at 8 ("*the Government* does not specifically recall what subpoenas *it* was referring to in *its* conversation and subsequent email with counsel") (emphasis added). Because Mr. Wexler authored the February 3, 2016, email, had the related conversation with advisory counsel, and most likely played a central role in the decision to file superseding felony charges, his role as a witness directly conflicts with his role as lead attorney for the government, at least for the purposes of the instant motion.

**Page 14 – REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR VINDICTIVE PROSECUTION**