```
 1                IN THE UNITED STATES DISTRICT COURT

 2                    FOR THE DISTRICT OF OREGON

 3   UNITED STATES OF AMERICA,      )
                                    )   Case No. 3:15-CR-0438-JO
 4            Plaintiff,            )
                                    )
 5   v.                             )   April 17, 2017
                                    )
 6   WINSTON SHROUT,                )
                                    )
 7            Defendant.            )
     _____)   Portland, Oregon
 8

 9                    TRANSCRIPT OF PROCEEDINGS

10                    (In Chambers Conference)

11       BEFORE THE HONORABLE ROBERT E. JONES, SENIOR JUDGE

12

13

14   APPEARANCES:
     FOR THE PLAINTIFF:        STUART WEXLER
15                             LEE LANGSTON
                               Department of Justice
16                             Tax Division
                               601 D Street NW
17                             Washington, DC  20004
                               (202)514-5496
18
     FOR THE DEFENDANT:        RUBEN INIGUEZ
19                             Assistant Federal Defender
                               101 SW Main Street, Suite 1700
20                             Portland, OR  97204
                               (503)326-2123
21

22

23   COURT REPORTER:          AMANDA M. LeGORE
                              CSR, RDR, FCRR, CRR, CE
24                            U.S. Courthouse
                              1000 SW Third Avenue Suite 301
25                            Portland, OR  97204
                              (503)326-8184
```

1                    (Monday, April 17, 2017; 10:30 a.m.)

2

3                         P R O C E E D I N G S

4

5              THE COURT:  Put on the record that the defendant,

6   Shrout, has waived appearance today.

7              Since we're just going to talk about things --

8              And thank you for working hard to get this thing

9   together.  And your paralegal is always welcome to join us --

10             MR. INIGUEZ:  Okay.

11             THE COURT:  -- and be with you at the trial, at

12   counsel table.

13             MR. INIGUEZ:  Thank you, Judge.  Yeah.

14             THE COURT:  Okay.  We'll start with the -- I think

15   we'll do the easy stuff first.

16             As I mentioned before, I'll conduct the voir dire for

17   both sides.  I have the requested questions.  I won't ask them

18   in that form, but I'll cover their experiences.

19             The -- the other thing is the preliminary

20   instructions -- you've done a great job in agreeing on almost

21   everything except for -- for the -- are you -- tell me what

22   your objections are to the Government's --

23             MR. INIGUEZ:  So, Judge, they have two instructions.

24   I believe it's two that are disputed.

25             THE COURT:  Yeah, well --

1          MR. INIGUEZ:  I'll start with the second one.  The

2     one they proposed is -- Government's proposed instruction 2 is

3     on page 3 of their document.  Deliberate ignorance.

4          THE COURT:  Yeah.

5          MR. INIGUEZ:  The problem there, I think, Judge, is

6     that goes directly against the idea of a sincerely held good

7     faith belief.  You know, here, this is instructing that the

8     defendant acted knowingly if he was aware of a high probability

9     that a fact was true and deliberately avoided learning the

10    truth.

11         The problem here, of course, is for the good faith

12    defense under *Cheek*, you can have an irrational, unreasonable

13    misunderstanding or mistake of the law.  And I think -- you

14    know, I -- I look for cases in which a *Cheek* instruction is

15    given, as well as deliberate ignorance, and I didn't find any.

16    And I think that's the reason why, is that it seems to be

17    countered to the idea that you can -- I understand the

18    Government, I guess, saying deliberately.  But you can be

19    unreasonable, you can be irrational in your belief, as long as

20    it's sincerely held.  So I think this just sort of -- if not

21    undercuts it, it directly conflicts with that.

22         THE COURT:  Do you have a suggested alternative?

23         MR. INIGUEZ:  I think this instruction just shouldn't

24    be given.

25         THE COURT:  Okay.  Defendant acted knowingly if you

1   find beyond a reasonable doubt that the defendant was aware of

2   a high probability that a fact was true and deliberately

3   avoided learning the truth.

4           MR. LANGSTON:  And, your Honor, if I may.

5           THE COURT:  Yeah.

6           MR. LANGSTON:  It may be premature to address this

7   instruction.  We included it as one of the possible

8   instructions, and I know your general practice is to give

9   this -- give the instructions to the jury prior to the

10  evidence.  We understand, under Ninth Circuit law, we would

11  only be entitled to this depending on what defense is set

12  forth.

13          However, particularly with the 514 count, we

14  anticipate that it likely will be relevant.  But perhaps it's

15  better to table this until the conclusion of the evidence.

16          THE COURT:  I think that's probably true.  And I

17  would anticipate saying -- him saying that he truly believed

18  what he was doing was lawful and he did so openly and to all

19  comers.  And so you would have to have some evidence that he

20  avoided learning the truth and he was reading the things he

21  wanted to.

22          But you have some admissions -- so I'll put a big

23  question mark on that.  I doubt that I'll give it.

24          MR. INIGUEZ:  Okay, Judge.  Because I think it gets a

25  little too metaphysical, I think, for the jury really to be

1  thinking, okay, this guy honestly, sincerely believed this

2  stuff --

3          THE COURT:  It's metaphysical enough for -- to act

4  intentionally to defraud, and yet willingness becomes an issue

5  for some counts and not others.

6          We've had an -- another instruction?

7          MR. INIGUEZ:  The other one is the Government's No. 1

8  instruction.

9          And this one, Judge, I think we have to look at it in

10 concert with my proposed -- Mr. Shrout's proposed instruction,

11 which is No. 2.  This is essentially competing versions of the

12 same instruction.

13          What I would -- what I would tell you is my

14 instruction -- No. 2 -- I verbatim quoted the Ninth Circuit

15 cases that we're talking about -- or that we're relying on;

16 whereas, the Government is kind of -- what?  Using their own

17 language to synopsize, in a way, what the cases are saying.

18 And then I think actually going a little further than the cases

19 would warrant.

20          For example, their Instruction No. 1, after you list

21 these indicia or hallmarks of -- of what would be, you know,

22 genuine financial instruments, they say:

23          Such obligations are illegal, regardless of their

24          status as negotiable or nonnegotiable.

25          Well, that's an overstatement of the cases, I would

1    say.

2           We're talking, here, about *Howick* case and the *Salman*

3    case.   And in -- in *Howick*, there was a negotiable instrument.

4    It was a currency.   In the other case, it was -- that was --

5    the document was actually marked "nonnegotiable."

6           What the -- what the courts are saying is that you

7    can't rely on one of these indicia.   One indicia won't take it

8    either way.   Right?   It doesn't win the day for you or -- you

9    have to look at the entire document and see what the indicia of

10   genuineness are.

11          So although in *Salman* they did say, "This document,

12   even though it's nonnegotiable that doesn't win the day for the

13   defendant," it's a little too much to say simply that they're

14   illegal regardless of whether they're negotiable or not.   It's

15   one factor to consider.   And that's why, you know, the

16   paragraph right above talks about those various factors.   So I

17   would certainly want that out.

18          Like I say, I just -- in my instruction, I tried to

19   go with exactly what the court said so that there wasn't an

20   issue here.   And so I would ask the Court to instruct on

21   Mr. Shrout's No. 2, rather than the Government's No. 1.

22          The other problem I have with the Government's

23   instruction is that it then is the intent to defraud, right?

24   These are supposed to be definitions.   And it does define -- it

25   goes on to define intent to defraud.   And it seems like they

1    are adding, maybe, one sentence here on good faith.  Whereas I

2    think -- and I have proposed -- a separate instruction that

3    there be a good faith defense to this.

4            So I don't think it's correct to just toss it out in

5    the -- you know, in these -- in this definitional section.  The

6    Government says, simply:

7                 Further, in determining whether he acted with

8                 intent to defraud, you may consider whether he had

9                 an honest, good faith belief in the authenticity

10                of the documents.

11           THE COURT:  Don't go too fast.

12           MR. INIGUEZ:  Okay.  So that sentence there.

13           And then the -- the next sentence, one who acts with

14   honest intention is not chargeable with fraudulent intent.

15           I mean, if we were actually looking at this

16   instruction, I would say, well, you know, it's an open issue.

17   It's whether you've charged somebody who has an honest

18   intention.  I take issue with the language here.

19           But I think, just as for the tax charges, we have the

20   instruction on the elements of the offense, and then you have

21   the defense, the *Cheek* instruction.

22           Here, I agree -- you were the other day noting that

23   willfulness is an element of the *Cheek* defense but good faith

24   is a separate defense to intent to defraud.  And I think the

25   parties are in agreement on that.

1          So what I would propose is the instruction that Judge

2    Simon gave in the *Stephens case*.  And that's what I gave you,

3    as well as the Ninth Circuit's opinion in *Molinaro* where that

4    came from.  And I think that's just the better form to have the

5    514 instruction on elements, and then the next good faith

6    defense; just as we're dealing with the tax instruction on the

7    elements for 7203 and then willfulness and the *Cheek* defense

8    right there.

9          THE COURT:  Response?

10          MR. LANGSTON:  Yes, your Honor.

11          I mean, I think the Ninth Circuit case law -- I'll

12    talk about good faith first -- is fairly clear that once you

13    tell the jury to act with intent to defraud means an act with

14    intent to deceive or cheat, and give that specific intent, you

15    actually don't need a good faith instruction at all.

16          Now, the Government's included one here, in part

17    because the jury is going to hear the *Cheek* instruction with

18    respect to tax counts.  And we think this provides

19    clarification with respect to the different standard for 514.

20          We think we've clearly stated the law there and

21    provided the defendant -- and laid out the good faith

22    instruction as part of that.  I think to add a separate

23    instruction as to good faith muddies the waters more than just

24    as part of the definition of intent to defraud allows the

25    defendant to argue that he has a good faith belief in the

1   authenticity of the documents and that negates his intent to

2   deceive or cheat.

3          With respect to the rest of the instruction, the

4   Government did follow the Ninth Circuit cases here.   In

5   situations where we did paraphrase, it's simply providing

6   additional context rather than laying out additional language

7   that would confuse the jury.

8          I actually think the defendant's instruction and the

9   Government's instruction are not too far off.   And the

10  Government's instruction No. 1 accurately reflects the case law

11  and provides the jurors with the information --

12         THE COURT:   I don't perceive there's a real dispute,

13  then.

14         MR. INIGUEZ:   I would agree, your Honor, that we're

15  not too far off.   I just think it's probably the better

16  practice, if we're using this case law, just to say what the

17  cases say, rather than sort of, you know, elaborating on the

18  paraphrasing --

19         THE COURT:   Judge Simon, and elsewhere, used the term

20  "family"?

21         MR. INIGUEZ:   Right.

22         THE COURT:   What the heck does that mean?

23         MR. INIGUEZ:   Saying family, class of documents.

24         THE COURT:   Huh?

25         MR. LANGSTON:   So I think that is directly from the

1    case law.

2              THE COURT:  I know it is.  But that doesn't make

3    it -- we've said many times, don't use the appellate opinions

4    for your instructions.  And I'm not going to use an expression

5    I don't understand.

6              MR. INIGUEZ:  Right.

7              MR. WEXLER:  And if I may, your Honor, just to sort

8    of follow up on what Langston said, the Government specifically

9    included the good faith instruction as it regards to intent to

10   defraud within the definitions related to 514 and not in a

11   separate instruction, so as the jury would understand that this

12   definition is specifically related to 514.

13             By giving them a good faith instruction separately,

14   it does increase the chance that the jury will misapply that

15   instruction to other statutes that have also been charged.

16             THE COURT:  I'll try my best to keep them separate.

17             MR. INIGUEZ:  Well, Judge, and that's why, in mine,

18   what -- I start off by saying is -- for the good faith

19   instruction.  And I think it's a little -- you know, to -- to

20   hide the good faith defense within the definition of intent to

21   defraud, that's, I think, my problem.  I think we need to pull

22   it out for the jury, and tell them the good faith is a complete

23   defense to a charge of violating Section 514.  That makes it

24   clear.  It doesn't -- it doesn't muddy anything because it's

25   making clear that it's for that particular charge only.  But I

1    think to sort of --

2          THE COURT:  As I said, we will make it clear as to

3    which charges we're talking about.

4          MR. LANGSTON:  Judge, I just also did want to

5    highlight one particular difference between the Government's

6    proposed instruction and the defendant's proposed instruction

7    is that at the bottom of the Government's proposed instruction

8    No. 1, fictitious instruments include even bogus instruments --

9          THE COURT:  Will you speak a little more slowly and

10   clearly.

11         MR. LANGSTON:  Yes, your Honor.

12         THE COURT:  Because, you see, this is Amanda LeGore,

13   and she's been with me for over 25 years.  And she'll frown at

14   you if you go too fast.  And the jury will, too.

15         MR. LANGSTON:  Yes, your Honor.

16         Include documents that a prudent person might be

17   unlikely to accept as genuine.  And I think that is very much

18   an accurate statement of the Ninth Circuit law.  We anticipate

19   that the defense in this case may well include something about

20   the fact that because the amounts were for a trillion dollars,

21   no one could accept these as real.

22         And so we think it's important that the jury be

23   instructed that even if a prudent person might be like --

24   unlikely to accept them, provided they bear a resemblance to

25   the -- to actual documents and the defendant having an intent

1    to defraud, that he's still liable under 514.

2              THE COURT:  All right.  I think that we will come up

3    with a composite, then.

4              And I do pre-instruct the jury to a degree, realizing

5    that these are preliminary instructions.  And that I will

6    supplement them later.  Repeat them and supplement them.

7              So a lot of times, previously -- well, judges have

8    not even instructed a jury beforehand.  And so I want to have

9    them realize what they -- what they have to decide, rather than

10   saying, by the way, after a week, you should have been paying

11   attention to this and this.

12             So it's a vast improvement for them.  The -- I looked

13   over your list of witnesses, and you have nine, which is fine.

14             Any particular problem with the witnesses that the

15   Government's going to call?

16             MR. LANGSTON:  Your Honor, if I may, one other issue

17   with the jury instructions is defense Instruction No. 6.

18             THE COURT:  Yeah.

19             MR. LANGSTON:  Defining "void."  The Government

20   thinks that instruction is improper.

21             THE COURT:  I don't think it's necessary.  Void is

22   void.

23             MR. INIGUEZ:  Judge, here's the reason we've raised

24   it.  I'm sure you've looked at these --

25             THE COURT:  Yes, I did.

1          MR. INIGUEZ:  Each one of them, on their face, says,

2     "Void where prohibited by law."  And I think most people might

3     have an understanding -- a general understanding, a lay

4     understanding what "void" means.  But I think to give them the

5     legal understanding of that meaning, I think that would help

6     them in determining what this exactly means on its face.

7          THE COURT:  Are you claiming that those are -- have

8     legal effect in this case?

9          MR. INIGUEZ:  No.  I would say that by using the word

10    "void," indicates that they're null.  That they're ineffective

11    legally, where prohibited by law.  If the Government's theory

12    is correct, that they're prohibited by law, then they are on

13    their face void, of no legal effect.  That's what the documents

14    say on their face.  I'm just concerned that a juror is not

15    going to understand the legal meaning of the word "void."

16         THE COURT:  Well, what is the legal meaning of this?

17    The fact that you're a notary from some Excalibur, or you've

18    been -- it's nonsense.  So I'm not going to worry about it.

19         MR. INIGUEZ:  Okay.

20         THE COURT:  I appreciate the position you're in.

21         MR. INIGUEZ:  Yeah.  And, obviously, I'm offering the

22    instruction.  I think it goes to the document, so I would ask

23    that it be instructed.  But I hear you.

24         THE COURT:  Yeah.  Anyway, I have said what I've

25    said, I wanted to say.

1          My question was, did you have any problem with the

2     witnesses that they've listed?

3          MR. INIGUEZ:  I don't think so.  I am not sure -- the

4     initial list was 16, I think.

5          Right, guys?

6          THE COURT:  Down to nine.

7          MR. INIGUEZ:  So I'm not sure exactly which nine

8     we're talking about now.

9          THE COURT:  He gave you a copy of it.

10         MR. INIGUEZ:  A new list?

11         MR. WEXLER:  Yes.  And it's just, for the most part,

12    the custodians that have been excluded.  But it will be --

13         THE COURT:  We'll --

14         THE CLERK:  Do you have a copy of this.  You can have

15    that.

16         MR. INIGUEZ:  (Handed document.)  Oh, yeah.  Right,

17    right.

18         THE COURT:  It looks innocuous.

19         Now, I haven't played that DVD.  Does that have the

20    statements being made by the defendant?

21         MR. WEXLER:  From the defendant's exhibits, your

22    Honor?

23         THE COURT:  No, I thought -- I -- excuse me.  I just

24    got a DVD.

25         THE LAW CLERK:  Right here, Judge.  That was from the

1    defendants --

2                THE COURT:  Oh.

3                MR. INIGUEZ:  That was from his website, his YouTube

4    channel.

5                THE COURT:  What's in it?

6                MR. INIGUEZ:  It's him introducing -- it's the first

7    YouTube presentation that he gives.  And it's kind of him

8    explaining what it is that he's doing.

9                THE COURT:  Do you know what it is?  Did you get a

10   copy of it?

11               MR. LANGSTON:  Yes, your Honor.

12               THE COURT:  Have you played it?

13               MR. LANGSTON:  We haven't played the DVD itself, but

14   we've been to the YouTube channel and watched it.

15               THE COURT:  How long is it?

16               MR. INIGUEZ:  20 minutes.

17               MR. LANGSTON:  And the entire thing consists of

18   hearsay.

19               THE COURT:  Okay.  I'll be looking at it.

20               But back to -- you have a cropped version of the

21   defendant making admissions of a party opponent?

22               MR. WEXLER:  Yes, your Honor.

23               As we submitted -- I can't remember exactly where we

24   submitted it, but we did list the timestamps during which we're

25   going to play the video.  So the jury will only see, in total,

1   I believe it's seven video clips.  They total about 20 minutes.

2          THE COURT:  Just give me a brief summary of your

3   most-telling admissions that he made.

4          MR. WEXLER:  Yes, your Honor.

5          In the videos from -- the video clips from both

6   Orlando and London, the defendant walks a seminar class through

7   the creation of a nonnegotiable bill of exchange, which the

8   defendant is charged with filing --

9          THE COURT:  What does he say?

10          MR. WEXLER:  He says he doesn't know what any of the

11   words mean.  And, in fact, he says, "Which is pretty cool,

12   because if we don't know what they mean, they don't either."

13   And he's referring to the Government and the banks.

14          THE COURT:  That's the essence of it?

15          MR. WEXLER:  Yes, your Honor.

16          In another part of the clip, he mentions how he came

17   up with the idea of putting a stub on the document because he

18   thought it would make it seem more complete.

19          And so the Government's argument is that he's

20   attempting to make this document appear as legitimate as

21   possible in order to trick someone into actually crediting it.

22   So by adding this stuff --

23          THE COURT:  Is he telling the audience that they

24   should do specific acts?

25          MR. WEXLER:  Yes.  He's telling -- you know, with

1    regards to the sub -- stub, he actually says:

2              You can do this or you can not do it.  We haven't

3              had success with it.  I thought it would work.  So

4              you -- you can try it.

5              In regards to the other aspects of the bill of

6    exchange, he does specifically say:

7              Look, this is where you put your Social Security.

8              Don't put any dashes.  Make sure that's just your

9              straight Social Security number.  This is where

10             you put this.  This is where you put that.

11             He walks them completely through the creation of --

12             THE COURT:  Is he telling them then you won't have to

13   file income tax?

14             MR. WEXLER:  In those clips he does not address the

15   filing of income taxes.

16             And, your Honor, the Government's clips generally do

17   not go to the 7203 counts.  They go to the 514 counts.  And

18   most particular, Counts 10 and 13, which is the nonnegotiable

19   bill of exchange the defendant sent to the Treasury.

20             In another, clip -- and I apologize, your Honor.  I

21   didn't bring my notes as to the clips, so I'm going off the top

22   of my head.

23             In another clip in San Antonio, he talks at length to

24   his seminar about the concept of wishful intent and how to get

25   around willful intent.  And that if you actually intend to do

1  something, you should be judged guilty of that act.

2          In the St. Joseph -- I believe it is -- Missouri,

3  video, he actually tells the seminar that they should juice up

4  the numbers on these documents, and specifically instructs them

5  to lie by saying, "You should put 10 million dollars instead of

6  ten dollars," for --

7          THE COURT:  I remember that part.

8          MR. WEXLER:  And -- because that's what the Treasury

9  is looking for.  They're not looking for a 10 or hundred dollar

10 debt.

11         THE COURT:  Okay.  This is what I -- are you going

12 to -- who's going to make an opening statement?

13         MR. LANGSTON:  I will, your Honor.

14         THE COURT:  Okay.  What I want you to do is to

15 clearly define in your opening statement the distinction

16 between these two main counts and the elements.  I want you to

17 point out, These are the elements you must find for this count,

18 these counts.  And these -- these are the elements you must

19 find for these counts.

20         And so the jury will know in their own mind, and

21 state it precisely where you think good faith is relevant and

22 where it is not.

23         MR. WEXLER:  And, actually, your Honor, I did find my

24 notes as to the other videos, if you would like me to address

25 the other video clips as well, I can.

1              THE COURT:  Just a moment.  Let's just do one at a

2    time.

3              MR. WEXLER:  Oh, I apologize, your Honor.

4              THE COURT:  And he's going to give the opening

5    statement?

6              MR. INIGUEZ:  He is, Judge.

7              THE COURT:  All right.

8              MR. INIGUEZ:  I won't jump there yet, but maybe we

9    can talk about closings when we're further along.

10             THE COURT:  Okay.  Now, for defense witnesses, is he

11   going to testify then?

12             MR. INIGUEZ:  He is.

13             THE COURT:  And is there anybody else?

14             MR. INIGUEZ:  Well, I gave you the list.

15             THE COURT:  I didn't see anybody else.

16             MR. INIGUEZ:  Oh, no?

17             He listed the agent, the special agent for the I.R.S.

18             THE COURT:  Oh, yeah, I did.

19             MR. INIGUEZ:  He, of course, will be cross-examining.

20   But he would like to call -- call the agent, rather than

21   cross-examine --

22             THE COURT:  Whatever.

23             MR. INIGUEZ:  Yeah.

24             He listed Mr. Wexler as a witness, and gave the

25   reasons.  I think he gave a little summary of why.

1          THE COURT:  Yeah.

2          MR. INIGUEZ:  And he listed the Attorney General for

3    Oregon, Ms. Rosenblum.  And I think --

4          THE COURT:  I didn't see that.

5          MR. INIGUEZ:  Yeah, yeah.  So he listed those --

6    those three --

7          THE COURT:  I would need an offer of proof as to each

8    one before they'll -- I'll even permit them to be called.

9          MR. INIGUEZ:  Okay.

10         THE COURT:  But -- there's no prohibition against

11   calling another lawyer, if it's relevant.

12         MR. WEXLER:  A couple of conditions, your Honor.

13         THE COURT:  Highly frowned upon, but it's not

14   impermissible.

15         MR. WEXLER:  There was, in the defendant's filing, a

16   proffer as to each witness, and the Government strongly objects

17   to all three, based on the proffer.

18         First, as Mr. Iniguez stated, Agent Hill will be a

19   Government witness, to the extent that the role of the I.R.S.

20   is relevant.  And, actually, Agent Hill won't be the only

21   I.R.S. witness of the Government's.  There will be two other

22   I.R.S. employees.  The defendant can cross-examine them as to

23   the role of the I.R.S.

24         THE COURT:  Sure.

25         MR. WEXLER:  Two, the proffer for my testimony is to

1    establish the Providence of the case and to establish that the

2    case is bonded.  Also to testify to the issuance of certain

3    bonds on the basis that if those bonds --

4            THE COURT:  I don't know what they're talking about.

5            MR. WEXLER:  Exactly, your Honor.  It's completely

6    irrelevant.  I have no personal knowledge of any of that

7    information and --

8            THE COURT:  I'll be excluding it.

9            MR. WEXLER:  And, finally, the defendant has

10   proffered that Ms. Rosenblum, Attorney General Rosenblum will

11   be called to establish whether the charged statutes are

12   constitutional and, therefore, relevant.  Which, as the

13   Government --

14           THE COURT:  Not going to happen.

15           MR. WEXLER:  Yes, your Honor.

16           THE COURT:  She doesn't even have to be -- respond.

17   Nor do you.

18           MR. WEXLER:  Thank you, your Honor.

19           THE COURT:  All right.  Well --

20           MR. WEXLER:  And then if your Honor would like to

21   then address the Government -- the defendant also, in addition

22   to the proposed video, proposed three additional exhibits.  And

23   the Government would note for the record that, first, the

24   defendant's proposed Exhibit No. 2 is already admitted into

25   evidence as Government's Exhibit 11-17.  That is the

1    Treasury -- the Office of International Treasury Control

2    Certificate.

3              THE COURT:  Sure.

4              MR. WEXLER:  Two, the defendant propose the Exhibit

5    No. 4, which is a -- purports to be a certified record of the

6    state of Delaware as relating to the Internal Revenue Tax and

7    Audit Service, Incorporated, is not the I.R.S.  And so that

8    document is entirely irrelevant to this case.

9              And, finally, the statement made in defendant's

10   proposed Exhibit No. 3, which is the United States's answer and

11   claim in diversified metals.

12             THE COURT:  Well, I don't know what in the world that

13   is.

14             MR. WEXLER:  Well, specifically, your Honor, I

15   believe the defendant is referring to paragraph 4 in that

16   document, which is a pleading by the United States in the case

17   in which it denied the Internal Revenue Service as an agency of

18   the United States Government.  It's actually accurate, the --

19   the Internal Revenue Service is an agency of the Department of

20   Treasury.  And the Department of Treasury is a department of

21   the United States Government.  So to the extent that that's

22   accurate, it's an accurate statement of law.  But the function

23   and proper role of the I.R.S. --

24             THE COURT:  It's a stupid thing to deny.

25             MR. WEXLER:  Yes, your Honor.  Yes, your Honor.

1          MR. INIGUEZ:  Maybe on that, Judge, if we could

2    stipulate as to the correct statement that Mr. Wexler just

3    made, that may be helpful, I guess.

4          THE COURT:  You make it --

5          MR. WEXLER:  And I believe that's actually how it's

6    phrased in the Superseding Indictment, your Honor, but I could

7    refer back to that.  But it's generally our practice to refer

8    to the I.R.S. as an agency of the department of --

9          THE COURT:  You just make that statement in your

10   opening statement.

11         MR. LANGSTON:  That the I.R.S. --

12         MR. INIGUEZ:  Department of Treasury.

13         THE COURT:  But that pleading is not going to be

14   received.  None of those will be.

15         MR. WEXLER:  So then, your Honor, the only question

16   mark is the defendant's video, which I understand you haven't

17   had a chance to review.  Mr. Langston has reviewed it, and we

18   would object to it as entirely self-serving hearsay.

19         THE COURT:  Well, we'll take a look at it.

20         It's going to be helpful to the jury to hear what

21   this fella is saying to these audiences in London and around,

22   to get some context to this.

23         I appreciate that his own statements are hearsay

24   under our rule, unless they fall within one of the exceptions:

25   Inconsistent, recent fabrication, identification.  They don't

1  fall under those.  But, on the other hand, this jury will want

2  to know what is this guy saying out there.

3          MR. INIGUEZ:  And, Judge, I think, just to go to that

4  issue, before you look at it, right, we were introducing all of

5  these other statements from all of these other seminars.  This

6  is a YouTube video that he presents to the world, as it was.

7  And I think in order to have the completeness of his statements

8  be known to the jury, I think it's important for this to be

9  heard.  And, again, it does go to that sincerely held belief

10  that he has.  So I think it is relevant and important for them

11  to hear it all.

12          MR. WEXLER:  To that effect, your Honor -- I'm sorry.

13  Did you want to --

14          MR. LANGSTON:  Yeah.  And, your Honor, I should note

15  that -- so this is not a speech that he gave at the seminars.

16  This is an entirely separate set of talking points that he

17  made --

18          THE COURT:  Where did he make them?

19          MR. LANGSTON:  -- on his YouTube channel.

20          He is literally speaking to the camera in his

21  apartment.  It doesn't speak to any of the documents contained

22  in the 514 counts.

23          THE COURT:  What?

24          MR. INIGUEZ:  He kind of -- what it is -- he says,

25  "This is the first time I'm doing this.  My first YouTube."

1    And he's trying to explain why he's doing it.

2           THE COURT:  I'll look at it.  It sounds awfully

3    self-serving.  The point now -- but I was hoping to have a

4    sniglet of him -- what he's saying to a live audience in a

5    hotel environment.

6           MR. WEXLER:  Well, your Honor, to the extent that the

7    Government's video -- they've all been taken at seminars and in

8    a live environment.

9           THE COURT:  I think that would probably do it.

10          MR. WEXLER:  And the other thing I would say about

11   the YouTube video is that the defendant can get on the stand

12   and apparently will get on the stand and say all of the things

13   that are in his video and simply say that I put up a video on

14   YouTube saying that.  The video itself is out-of-court hearsay

15   and should not be available.

16          THE COURT:  Well, after he testifies, we'll see if it

17   needs any -- if it's simply cumulative, it won't happen.

18          MR. WEXLER:  Thank you.

19          THE COURT:  Okay.  Anything else?

20          MR. WEXLER:  Yes, your Honor.  I apologize.

21          And these are --

22          THE COURT:  Don't apologize.  We're here to -- this

23   is hard work, when we're dealing with a person who wants to

24   represent themselves, who have no legal training.  They are all

25   over the block.  And so counsel's got -- he's trying a case

1    with his arms tied together.

2           Anyway, go ahead.

3           MR. WEXLER:  So, your Honor, I have -- the Government

4    has a few points that we could either resolve today or we could

5    resolve tomorrow.

6           THE COURT:  Better do it right now.

7           MR. WEXLER:  So the first is the Government intends

8    to introduce via judicial notice under Federal Rule of Evidence

9    201, a copy of 18 USC 514 that is more complete than what is

10   contained in the jury instruction.  And, specifically, the

11   reason why is that 18 USC 514(b) refers to definitions

12   contained in 18 USC 513.

13          And a copy of 18 USC 513 was found on the defendant's

14   computer and has been admitted as Government's Exhibit -- part

15   of Government's Exhibit 11-8.

16          What the Government would like to do is to establish,

17   one, that the defendant knew of 18 USC 514.  And the Government

18   will do that through an alert that was found on the defendant's

19   computer specifically referencing 18 U.S.C. 514.  Show

20   18 US 514 where it references 513.  Make it clear that 514 was

21   not on the defendant's computer but 513 was.

22          THE COURT:  Can't you save that for your

23   cross-examination of him?

24          MR. WEXLER:  Yes, except the defendant could always

25   decide that he doesn't want to --

1          THE COURT:  Well, I don't want to give an exhibit of

2     what the law is.  It's my job to do that via instruction.  I

3     think that you can do that when he testifies.  And if he

4     denounces it, then you can make your offer.

5          MR. WEXLER:  Very well, your Honor.  The second item

6     is while --

7          THE COURT:  And there's nothing that prevents you

8     from blowing that up, any portion of my instructions.  Both

9     sides can blow up and -- in your closing -- even in your

10    opening statement, but preferably in your closing argument.

11         MR. WEXLER:  Yes, your Honor.  And I do intend to do

12    that.  It's just that this particular part of 514, since it's

13    not relevant to the jury's deliberations, is not part of your

14    instruction.

15         THE COURT:  Well, you do it in your --

16         MR. WEXLER:  I think cross-examination will work,

17    your Honor.

18         THE COURT:  If it doesn't, you can do it in your

19    closing argument.

20         MR. WEXLER:  Thank you.

21         THE COURT:  And perhaps in my closing instructions.

22         MR. WEXLER:  The other two items, the Government --

23    as you may recall, your Honor -- agreed to withdraw

24    Government's Exhibit 11-9 and 11-10 and simply refer to them in

25    summary.

1          In going back through our evidence, however, there
2    are two specific documents in 11-10 that are highly relevant to
3    other documents that have already been admitted.
4          THE COURT:  Is that part of the summary?
5          MR. WEXLER:  They're part of the summary, your Honor,
6    but the content is very specific.
7          THE COURT:  Well, if they have independent relevance,
8    that's fine.  The fact that he has a summary doesn't prohibit
9    you from using specifics, obviously.
10         MR. WEXLER:  Yes, your Honor.
11         It's just that they are not currently admitted
12   because they were excluded as part of 11-10.
13         THE COURT:  Oh, I see.
14         MR. WEXLER:  So the Government would simply suggest
15   that they be admitted as Government's Exhibits 11-20 and '21.
16   And we could either do that at the --
17         THE COURT:  Identify them more clearly, other than
18   number.
19         MR. WEXLER:  Yes, your Honor.
20         They are in Exhibit 11-10, page 34, which is a
21   template of an international bill of exchange for credit to
22   Metro Grant Holding.  That is the same IBOE that's charged in
23   Counts 10, 11, 8, and 9.
24         And then also 11-10, page 139, which is an IBOE
25   template to -- and someone known as Father George Abdulrahim

1  Mouselli.

2          THE COURT:  Spell that.

3          MR. WEXLER:  I would have to do it off the top of my

4  head, your Honor.  But I believe --

5          THE COURT:  Well, that's good enough.  Phonetically

6  is fine.

7          MR. WEXLER:  Thank you.

8          And that relates directly to an item that's been

9  admitted as Government's Exhibit 11-8, a joint venture

10  agreement that proposes the defendant make an IBOE.

11          THE COURT:  When I said you didn't have to spell it,

12  but would you please do it phonetically.

13          MR. WEXLER:  Oh, oh.  I'm sorry, your Honor.

14          THE COURT:  For Amanda.

15          MR. WEXLER:  It's Father George Abdulrahim Mouselli.

16          Is that good?

17          THE COURT:  Got it?

18          THE COURT REPORTER:  (Nods head.)

19          MR. WEXLER:  And so, your Honor, those two exhibits

20  are what the Government would propose as 11-20 and 11-21.

21          THE COURT:  Okay.  There is no objection.  They'll be

22  received.

23          MR. WEXLER:  And then the remainder are just

24  housekeeping items, your Honor.

25          The first is Kristin Ellinger, who is the revenue

1  agent in the Government's case, as noticed in our trial brief

2  and I believe in our witness summary.

3          Ms. Emminger will be testifying last because she is

4  testifying to certain tax implications of the defendant's

5  conduct, and she must take into account the entirety of the

6  admitted testimony when doing that.

7          THE COURT:  Fine.

8          MR. WEXLER:  Draft schedules have already been

9  provided to the defendant.  But before Ms. Emminger testifies,

10  the Government would ask that we take a break, so that

11  Ms. Emminger can actually finalize --

12          THE COURT:  Just alert me when that happens.

13          MR. WEXLER:  Yes, your Honor.

14          The other item -- well, a second item is that, as the

15  Government has informed and the Court has seen, Ms. Becker, the

16  Government's --

17          THE COURT:  Yeah.

18          MR. WEXLER:  -- witness, is not in good health and

19  cannot sustain remaining in court --

20          THE COURT:  Do you really need her?

21          MR. WEXLER:  Yes, your Honor.  Absent a stipulation

22  to the deposition --

23          THE COURT:  Well, it would appear that she's not in

24  good health, and this would be former testimony?

25          MR. WEXLER:  Yes, your Honor.

1          THE COURT:  Subject to -- prior testimony under oath,

2     subject to examination?

3          MR. WEXLER:  Yes, your Honor.

4          THE COURT:  It will be admitted on that basis.  She

5     doesn't need to appear.

6          MR. WEXLER:  So to that extent, your Honor, would the

7     Court allow the Government to play the video of her testimony

8     for the Court?

9          THE COURT:  Either way.

10         MR. WEXLER:  Okay.

11         MR. INIGUEZ:  Judge, Mr. Shrout would -- when he was

12    here the other day, he did object to that.

13         My understanding -- you know, there's this

14    relationship among these folks.  Right?  The gal that you

15    allowed to stay in the courtroom, Ms. Bekken, Patricia, is

16    really good friends with Ms. Becker.  And so in speaking with

17    Ms. Becker, she understands that actually right now Ms. Becker

18    is doing better than she was back when we did the deposition.

19         I understand that she would prefer not to come to

20    Court, but she is certainly local.  She's certainly in good

21    enough health where she could appear.  I don't think she meets

22    the standards for an unavailable witness.

23         THE COURT:  Do you want her here in person?

24         MR. INIGUEZ:  Mr. Shrout does want her here in

25    person.

1          MR. WEXLER:  And the Government is fine with that,

2    your Honor, and generally would agree.  We have not met with

3    Ms. Becker since she testified --

4          THE COURT:  Does -- she has a medical -- documented

5    medical disability, of course, and it's unrebutted?

6          We will go with her testimony under 804.  But,

7    otherwise, she'll -- if she has to go to the bathroom, we have

8    a facility within steps.

9          MR. WEXLER:  Yes.

10         THE COURT:  Your call.

11         MR. WEXLER:  Yes, your Honor.

12         And the reason I --

13         THE COURT:  I mean, it's my call, but I'll adhere to

14   the information that I get.

15         MR. WEXLER:  Thank you, your Honor.

16         And the reason I bring it up is simply that the

17   Government intends for Ms. Becker to be our fifth witness, and

18   it will mark the transition in the Government's case from the

19   514 statutes to the 7203 statutes.

20         THE COURT:  Perfect.

21         MR. WEXLER:  We believe there is a possibility that

22   we could get to Ms. Becker's testimony late in the day on

23   Tuesday, however -- which is tomorrow.

24         THE COURT:  I doubt it.  I doubt it.

25         MR. WEXLER:  Well, the Government has instructed

1    Ms. Becker, because of her health, to just show up Wednesday

2    morning.

3            THE COURT:  Perfect.

4            MR. WEXLER:  And the Government would simply ask that

5    if we get to Ms. Becker's testimony, that the Court adjourn for

6    the day and take up the next morning.  The Government will only

7    have about two hours total.

8            THE COURT:  As long as we get through before next

9    week.  I've got a commitment for the following Monday.

10           But everything's moving much faster.

11           MR. WEXLER:  Thank you, your Honor.

12           THE COURT:  So on that score, do you think we'll be

13   through with your case by Wednesday?

14           MR. WEXLER:  Yes, your Honor.

15           I anticipate, based on our witness prep -- of course,

16   we don't know the extent of cross-examination.  But we do

17   believe that we will --

18           MR. INIGUEZ:  Neither do I.

19           MR. WEXLER:  But we do believe that we will be

20   closing our case-in-chief sometime Wednesday, possibly

21   Wednesday morning.

22           THE COURT:  And how long the defense will take is how

23   long it will take.

24           MR. INIGUEZ:  Well, your Honor, given the anticipated

25   rulings on his other witnesses, it shouldn't be -- should not

1   take very long.

2            Of course, the Government is suggesting that rather

3   than do things like a 20-minute video that he be allowed to

4   present that.  It may take -- may take longer, but I can't

5   imagine it's going to be --

6            THE COURT:  Fine.

7            MR. INIGUEZ:  -- past Thursday.

8            THE COURT:  Perfect.

9            MR. WEXLER:  Thank you, your Honor.

10           And then, finally, the Court docket says that the

11  proceeding will begin tomorrow at 9:00 a.m.  Just wanted to

12  confirm that time and also confirm the Court's expected daily

13  calendar, when --

14           THE COURT:  Okay.  I -- I -- as I told you, I go down

15  and excuse the jurors who can't serve.

16           We have 35 jurors coming in.  We've got ten

17  peremptories for the defense and six for the Government, and I

18  hope you don't use anywhere near that number.  And -- because

19  I -- but I think I can tell the jury safely that this case will

20  be complete -- completed no later than Friday.  And that if we

21  finish earlier, they'll be happier.

22           But my hours are 9:00 a.m., morning.  Break at noon.

23  Pick up at 1:15 to 1:30.  And go until 4:30.

24           MS. BECKERMAN:  We have an 11:30 one day.  We have

25  11:30 hearings on one day.

1          THE COURT:  Yeah.  Well, they'll be fast.

2          THE CLERK:  Yeah.  But, I mean, we'll be breaking.

3   Just so they'll know we'll be breaking early that day.

4          MR. WEXLER:  What day is that?

5          THE CLERK:  I have that list right here for him.

6          The 9:30s are on the 19th.

7          MR. WEXLER:  The 11:30s?

8          THE CLERK:  The 11:30s, I mean.  Yeah.  We have two

9   on the 19th.  Um-hmm.

10         THE COURT:  Okay.  Well, you have all done a great

11  job to narrow these issues down, and we'll take it from there.

12         MR. WEXLER:  Thank you, your Honor.

13         THE COURT:  Anything else?

14         MR. LANGSTON:  Not from the people -- or not from the

15  Government.

16         MR. INIGUEZ:  You had asked at the beginning, Judge,

17  about their witnesses.  I don't see any problem with those nine

18  witnesses.

19         THE COURT:  Thank you.

20         MR. LANGSTON:  Was there an issue with the defense

21  closing?

22         MR. INIGUEZ:  Oh, I wanted to raise the issue of the

23  defense closing and the possibility that Mr. Shrout be allowed

24  to do the majority of that but I be allowed to do a brief

25  closing as well.

1          THE COURT:  It would be welcome.

2          MR. INIGUEZ:  Thank you.

3          THE COURT:  Anything else for the good of the order?

4          MR. INIGUEZ:  No, Judge, not for the defense.

5          MR. LANGSTON:  No, your Honor.

6          THE COURT:  Off the record.

7          (Conclusion of proceedings.)

8

9                         --oOo--

10

11  I certify, by signing below, that the foregoing is a correct

12  stenographic transcript of the oral proceedings had in the

13  above-entitled matter this 8th day of May, 2017.  A transcript

14  without an original signature or conformed signature is not

15  certified.  I further certify that the transcript fees and

16  format comply with those prescribed by the Court and the

17  Judicial Conference of the United States.

18
           /S/ Amanda M. LeGore
19        _____

20        AMANDA M. LeGORE, CSR, RDR, CRR, FCRR, CE
             CSR No. 15-0433  EXP:  3-31-2018
21

22

23

24

25