IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 3:15-CR-00438-JO |
| | ) | |
| v. | ) | |
| | ) | |
| WINSTON SHROUT, | ) | OPINION AND ORDER |
| | ) | |
| | ) | |
| Defendant. | ) | |

JONES, J.

    Defendant Winston Shrout (Shrout) moves to reduce his sentence under 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 198. Specifically, Shrout requests that his sentence be reduced to time served and that he be immediately released to an extended period of home confinement. Shrout's reason for filing the petition is his medical condition in the face of the novel coronavirus pandemic. The government opposes his motion. For the reasons that follow, the Court DENIES the motion.

### BACKGROUND

    Shrout, a 72 year old man, was convicted on April 21, 2017 of nineteen counts including making, presenting, and shipping fictitious obligations under 18 U.S.C. § 514(a), and failing to file tax returns under 26 U.S.C. § 7203. The Court sentenced him to 120 months in prison. Shrout asked to self-report to prison and the Court reluctantly granted his request after securing

Shrout's promise that he would voluntarily report to prison. Sentencing Tr., ECF No. 175 at 59. Shrout filed an appeal in the Ninth Circuit and requested bail pending appeal. (ECF No. 186) The Ninth Circuit denied his request for bail which triggered my order that he report to FCI Sheridan on March 4, 2019, nearly two years after he had been sentenced. ECF No. 183. Shrout called his probation officer and promised to report to Sheridan on March 4. Shrout never turned himself in. Instead he hid out and the U.S. Marshalls initiated a nation-wide search. As a result of being a fugitive, Shrout's appeal to the Ninth Circuit was dismissed. After 7 months, U.S. Marshals apprehended Shrout in Payson, Arizona. He was detained and began serving his sentence at FCI Terminal Island. To date, he has served approximately 8 months of his 120-month sentence. His projected release date is May 7, 2028.

## LEGAL STANDARD

A district court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see Dillon v. United States*, 560 U.S. 817, 824-25 (2010). Congress, however, has expressly authorized a district court to modify a defendant's sentence in three limited circumstances: (1) when granting a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A); (2) when expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; or (3) when a defendant has been sentenced based on a sentencing range that has subsequently been lowered by the Sentencing Commission. 18 U.S.C. § 3582(c)(1).

Although the compassionate release statute previously permitted sentence reductions only upon motion of the Director of the Bureau of Prisons (BOP), Congress expanded the statute in the First Step Act of 2018. Pub. L. No. 115- 391, § 603(b), 132 Stat. 5194, 5239 (Dec. 21, 2018) (FSA). A defendant, however, may bring a motion for compassionate release only *after*: (1)

petitioning the BOP to make such a motion on the defendant's behalf; *and* (2) either (a) exhausting all administrative appeals after the BOP denied the defendant's petition or (b) thirty days have elapsed after the warden of the defendant's facility received the defendant's petition, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A).

Pursuant to the FSA, a court may reduce a defendant's sentence if "extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . ." 18 U.S.C. § 3582(c)(1)(A)(i). Congress did not define "extraordinary and compelling" other than that "[r]ehabilitation of the defendant alone" is insufficient. 28 U.S.C. § 994(t).

The pertinent policy statement by the Sentencing Commission for sentence reductions related to medical ailments was last amended before the FSA passed and is found in Application Note 1 to United States Sentencing Guidelines (U.S.S.G.) § 1B1.13.[1] The Note[2] identifies

---

[1] Because the Sentencing Commission's policy statement was not amended after enactment of the First Step Act, "a growing number of district courts have concluded the Commission lacks an applicable policy statement regarding when a judge can grant compassionate release . . . because the Commission never harmonized its policy statement with the FSA." *United States v. Mondaca*, 89-cr-0655 DMS, 2020 WL 1029024, at *3 (S.D. Cal. Mar. 3, 2020) (citing *Brown v. United States*, 411 F. Supp. 3d 447, 499 (S.D. Iowa 2019) (canvassing district court decisions)) (quotation marked omitted). As explained by one court, "a majority of federal district courts have found that the most natural reading of the amended § 3582(c) and [28 U.S.C.] § 994(t) is that the district court assumes the same discretion as the BOP director when it considers a compassionate release motion properly before it." *United States v. Perez*, 88-10094-1-JTM, 2020 WL 1180719, at *2 (D. Kan. Mar. 11, 2020).

[2] The portion of the FSA relevant to Shrout's petition defines "extraordinary and compelling reasons" as:

> 1. **Extraordinary and Compelling Reasons.**—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) **Medical Condition of the Defendant.**—
>
> * * *
>
> (ii) The defendant is—

extraordinary and compelling reasons in four categories: (1) the medical condition of the defendant; (2) the age of the defendant; (3) family circumstances; and (4) other reasons as determined by the Director of the BOP in a defendant's case amounting to an extraordinary and compelling reason, other than, or in combination with, the reasons described in subdivisions (1) through (3).

The policy statement also requires the Court to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction), after considering the factors set forth in 18 U.S.C. § 3553(a), and whether the defendant is a danger to the safety of any other person or to the community. U.S.S.G. § 1B1.13(4).

A defendant seeking a reduction in his term of imprisonment bears the burden to establish both that he has satisfied the procedural prerequisites for judicial review and that "extraordinary and compelling" reasons justifying compassionate release. 18 U.S.C. § 3582(c)(1)(A).

---

(I) suffering from a serious physical or medical condition

(II) Suffering from a serious functional or cognitive impairment, or

(III) Experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) **Age of the defendant.**—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 year or 75 percent of his or her term of imprisonment, whichever is less.

\* \* \*

(D) **Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

## **DISCUSSION**

On April 1, 2020, Shrout submitted a request to the BOP for a "reduction in sentence due to the dangers of the coronavirus." Gov't. Resp, ECF No. 201 at 3. He submitted a second request on May 22, 2020. *Id.* According to the government's response, the warden at FCI Terminal Island denied Shrout's request on June 5, 2020.[3] *Id.*

On April 23, 2020, during FCI Terminal Island's mass screening of inmates for COVID-19, the BOP health services tested Shrout. ECF No. 204 at 21. Six days later, he received a positive test result. ECF No. 204 at 19. Shrout underwent a chest x-ray and was placed in an inpatient unit at the Health Services Center at Terminal Island on April 30, 2020. ECF No. 204 at 13, 19. During Shrout's COVID-19 evaluation, he denied experiencing any symptoms, including fever, shortness of breath, or coughing. However, his chest x-ray showed opacity compatible with multifocal pneumonia. ECF No. 204 at 16. The BOP health services placed Shrout on two antibiotics, Zithromax and Cephalexin. ECF No. 204 at 18. On May 1, 2020, during a follow-up medical appointment, Shrout again denied any symptoms. ECF No. 204 at 10. The following day, Shrout again denied having any chest pain, shortness of breath, or fever. He underwent another chest x-ray. Shrout reported feeling rested and requested to be returned to the general population. ECF No. 204 at 7. He was discharged from the health unit but received chest x-rays on May 5th, May 11th, and May 20th, 2020. ECF No. 204 at 1-3. Those x-rays showed that his pneumonia was improving. *Id.*

---

[3] It is unclear to which request the warden responded. The government does not argue that Shrout has failed to "fully exhaust all administrative rights." Because 30 days have passed since Shrout's April 1 request, this motion is properly before me. *United States v. Alam*, 2020 WL 2845694 (6th Cir. June 2, 2020) (defendant's failure to satisfy administrative exhaustion requirement does not deprive a court of subject-matter jurisdiction.)

Compassionate release is "rare and "extraordinary" and courts routinely deny such claims. *United States v. Mangarella*, 2020 WL 1291835, at *2-3 (W.D.N. C. Mar. 16, 2020). Other district courts have declined to grant compassionate release when a defendant is suffering from chronic conditions that are being managed in prison. "To be faithful to the statutory language requiring 'extraordinary and compelling reasons,' it is not enough that Defendant suffers from . . . chronic conditions that [he] is not expected to recover from. Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *United States v. Alvarez*, 3:18-cr-00158-SI, 2020 WL 3047372, at *5 (D. Or. June 8, 2020) (rejecting a claim from a 50 year old, severely obese defendant suffering from Hepatitis C, diabetes, high blood pressure, high cholesterol, chronic liver disease, and asthma) (brackets in original) (quoting *United States v. Ayon-Nunez*, 1:16-CR-00130-DAD, 2020 WL 704785, at *2-3 (E.D. Cal. Feb. 12, 2020)).

Under the First Step Act, the Court considers whether Shrout's medical condition is an extraordinary and compelling reason justifying compassionate release. The Court recognizes that prisoners are exceptionally vulnerable to infection due to the lack of distancing and hygiene issues endemic to prison life. *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities,* CDC (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctinal-detention.html. Further, the CDC identifies people who are at higher risk for severe illness as:

- People 65 years and older
- People who live in nursing home or long-term facility
- People of all ages with underlying medical conditions, particularly if not well controlled, including:
  - People with chronic lung disease or moderate to severe asthma
  - People who have serious heart conditions

> People who are immunocompromised
> - People with severe obesity (body mass index [BMI] of 40 or higher)
> - People with diabetes
> - People with chronic kidney disease undergoing dialysis
> - People with liver disease"

*People Who Are at Higher Risk for Severe Illness,* CDC (June 26, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html. The Court acknowledges that Shrout suffers from underlying conditions (cardiovascular diseases) that would make him more susceptible to contracting COVID-19, and that the virus would further complicate those conditions. In addition to his age, those are valid concerns, but Shrout has already contracted COVID-19 and, crucially, the BOP has properly managed the disease. While the Court considers Shrout's pneumonia to be a serious medical condition, it was not one that "substantially diminishe[d] his ability to provide self-care within the environment of a correctional facility and from which he is not expected to recover." In fact, Shrout was mostly asymptomatic and appears to have recovered from his bout with COVID-19. The Court finds that Shrout has not carried his burden to prove his medical condition is an "extraordinary and compelling" reason that warrants a sentence reduction in this case.[4]

In addition, an analysis of the § 3553(a) factors shows Shrout has not proven that his history and character warrant a reduction in his sentence or that he would be deterred from continuing his criminal activity should he be granted compassionate release. Section 3553(a) factors include:

> (1) The nature and circumstances of the offense and the history and characteristic of the defendant;
> (2) The need for the sentence imposed

---

[4] Although he does not specifically argue this issue, Shrout also fails to prove age is an "extraordinary and compelling" reason justifying compassionate release. While he is over 65 years old, he has served neither 10 years nor 75 percent of his term of imprisonment.

7 Opinion and Order

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment;
> (B) the need to afford adequate deterrence to criminal conduct
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553(a).

Although this is Shrout's first conviction, his actions leading up to the indictment took place over decades. For more than 20 years, he willfully failed to file tax returns. Tr. Transcript, ECF No.171 at 46. He organized and presented public seminars at which he promoted schemes to defraud financial institutions and the United States government. He produced fictitious financial instruments and sent them to financial institutions both domestically and internationally. He sold DVD recordings and held private consultations with clients instructing recipients how to use his schemes to defraud. Many of those who followed Shrout's teachings, including his stepdaughter, were arrested and convicted of crimes. ECF No. 155 at 19. Even post-conviction, Shrout was undeterred. He advertised a scheduled "seminar" to be held the weekend before his competency hearing, until the Court ordered him to stop. ECF No. 174 at 80, 84. While Shrout has accepted responsibility for his back taxes, he has expressed no remorse for any of his crimes. The strongest evidence as to Shrout's character is that, after being granted the privilege of remaining at liberty for over two years following his conviction and promising to self-report to prison, he absconded.

Even if the Court decided that Shrout proved his medical condition was "extraordinary and compelling," which it does not, and even if the Court's analysis of the 3553(a) factors bolstered Shrout's case, which they do not, his proposed release plan is insufficient. Shrout promises that for the remaining 95 months of his sentence, he will remain in home confinement. Shrout has proven by his behavior that his promises are meaningless. He lied to the Court and

the probation officer when he promised that he would self-report to prison. There are no combinations of conditions the Court could impose that would insure that Shrout would remain in home confinement and compliant with the other general and special conditions.

## CONCLUSION

Pursuant to 18 U.S.C. § 3582(c)(1)(A), the Court finds no extraordinary or compelling medical reasons that warrant a reduction of Shrout's sentence. After considering the § 3553(a) factors, the Court finds Shrout's history and character do not make him a good candidate for compassionate release. The Court DENIES his motion. ECF No. 198. All other pending motions are denied as moot.

IT IS SO ORDERED.

Dated this 26th day of June 2020.

_____
Robert E. Jones
Senior United States District Judge